46 F.3d 503
 1995 Fed.App. 6P
 Glenn S. KELLOGG; Lani R. Smith; Lawrence Dessenberg;
John Stamper; Michael Jones; Robert Donley; Daniel
Schreiber; and Michael Karhoff, on behalf of themselves and
all others similarly situated, Plaintiffs-Appellants,
v.
John W. SHOEMAKER, et al., Defendants-Appellees.
 No. 93-4287.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 13, 1994.
Decided Jan. 9, 1995.
As Revised on Denial of Rehearing
Feb. 28, 1995.
 
 Kenneth R. Spiert (argued and briefed), Public Defender's office, Ohio Public Defender Com'n, Columbus, OH, for plaintiffs-appellants.
 Donald A. Cataldi (briefed) and Charles L. Wille (argued), Office of the Atty. Gen. of Ohio, Columbus, OH, for defendant-appellee.
 Before: KEITH, WELLFORD, and DAUGHTREY, Circuit Judges.
 WELLFORD, Circuit Judge.
 
 
 1
 Glenn S. Kellogg ("Kellogg"), an Ohio prison inmate, initiated a 42 U.S.C. Sec. 1983 class action suit in 1990 seeking declaratory and injunctive relief with respect to certain Ohio parole revocation procedures.
 
 
 2
 This case began in federal court in August 1990, when Kellogg[1] filed a pro se complaint alleging, under 42 U.S.C. Sec. 1983, that the Ohio Parole Revocation procedures violated his procedural due process rights. The Ohio public defender, who began representing Kellogg, moved to certify a class to challenge certain parole revocation procedures. The district court certified the class to include "all persons whose parole was, or will be, revoked by the Ohio Adult Parole Authority through a so-called parole-violator recommissioned hearing because they have been convicted of a new felony committed while on parole."
 
 
 3
 The provisions of Ohio law now under attack are the new "emergency" provisions that the Ohio Adult Parole Authority ("agency") enacted effective September 1, 1992. Originally, the class brought its action against the older repealed provisions, which were discretionary and would have required Ohio to provide parolees with a "meaningful" hearing prior to revoking their parole.[2] Under these old regulations, a parolee convicted of a subsequent crime in Ohio, while on parole, was conclusively presumed to be in violation of his parole. The parolee under the old regulations, however, was entitled to a hearing to present any relevant mitigating circumstances. Although plaintiff parolees seem to concede they were given a "hearing" under the old regulations, they argued that it did not meet the procedural requirements that Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), required. The district court agreed with their argument, holding that the parolees did not receive sufficient notice, were denied the assistance of counsel, and were not permitted to call or to subpoena witnesses.
 
 
 4
 The agency then repealed the old regulations and implemented new ones. The new regulations did away with any type hearing if the defendant was convicted by an Ohio court "for an offense he committed while on any release granted by the Adult Parole Authority...." There would no longer be a hearing to determine mitigating circumstances surrounding the revocation. The only process the parolees would receive would be the parole authority's verification "that the sentence was imposed for an offense that occurred while the prisoner was under release status."
 
 
 5
 The agency revised the parole procedures to eliminate any agency's discretion in deciding whether to revoke parole. See Black v. Romano, 471 U.S. 606, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985), which had indicated that the hearing procedures required in Morrissey were applicable only if the parole board exercised discretion in revoking parole. See also Sneed v. Donahue, 993 F.2d 1239 (6th Cir.1993); Harrison v. Parke, 1990 WL 170428 (6th Cir.).
 
 
 6
 The district court then granted summary judgment in favor of the agency, sustaining its reliance on the amended regulation. The district court held that the new policy rendered the plaintiffs' challenges moot. The district court refused to amend its judgment and refused to grant plaintiffs any relief. The district court discussed rejecting the merits of the plaintiffs' constitutional challenges to the new regulations.
 
 
 7
 Plaintiffs appeal in order to challenge the district court's holding that the change in the parole procedures rendered the plaintiffs' constitutional challenges moot. Plaintiffs contend that the agency violated its rule-making powers by adopting the new procedures. Plaintiffs also argue that this court should reconsider Sneed v. Donahue, which held that a parole board was not required to provide the parolee with a hearing if the board exercised no discretion in revoking parole. Last, they wish to challenge the constitutionality of the new regulations, arguing that the change of the parole procedures in this respect constitutes a violation of the ex post facto clause.
 
 I. JURISDICTION AND STANDARD OF REVIEW
 
 8
 We have jurisdiction over this appeal pursuant to 28 U.S.C. Sec. 1291 since there is an appeal from a final order of the district court. The appropriate standard of review is de novo because the appeal concerns issues of law.
 
 II. MOOTNESS
 
 9
 There is some confusion as to whether the district court held that the plaintiffs' constitutional challenges to the new procedures were moot. The district court discussed the constitutional merits of the plaintiffs' arguments, but refused to amend the court's judgment dismissing the claims of plaintiffs:
 
 
 10
 Plaintiffs now seek to amend this Court's judgment, arguing that the application of OAC Sec. 5120:1-1-21 to members of the plaintiff class whose parole had been revoked under the old regulation violates the constitutional prohibition against ex post facto laws.... As this court ruled in its Opinion and Order entered May 27, 1993, the relevant analysis turns to whether or not plaintiffs' claims for relief are moot. Plaintiffs' sole claim for injunctive relief sought to restrain defendants from violating plaintiffs' procedural due process rights in the future through the use of constitutionally infirm PVR hearing or procedures. Plaintiffs no longer have any procedural due process rights to a meaningful hearing in connection with felonies committed after the effective date of the new regulation. Accordingly, the enactment of OAC Sec. 120:1-1-21 has rendered plaintiffs' claims for future injunctive relief moot.
 
 
 11
 The plaintiffs do not contest the mootness of their challenges to the original procedures.[3] Plaintiffs argue, however, that they should be allowed to challenge the constitutionality of the new parole procedures.
 
 
 12
 We note that considerable controversy surrounds the mootness doctrine after Honig v. Doe, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). One rationale holds that the mootness doctrine is fundamentally tied to the case and controversy language of Article III, and, therefore, the court may only review if there is a justiciable issue. Another view is that the mootness doctrine is more flexible, and may be used to accomplish prudential concerns to avoid the squandering of judicial resources after the decisional process is underway. See Corey C. Watson, Mootness and the Constitution, 86 Nw.U.L.Rev. at 143.
 
 
 13
 Under either rationale, the plaintiffs' challenge to the new procedures are not moot. The parole authority may not be allowed to abort or delay constitutional review of the parole procedures by substitution of a new procedure on the eve of adjudication. Prudential concerns also require us to hear this case rather than to dismiss it as moot as to those plaintiffs who are alleged to have committed offenses and had their paroles revoked prior to September 1, 1992. We conclude that a "case or controversy" exists, and that plaintiffs have raised proper concerns about the regulations' constitutionality as applied to offenses which occurred prior to the date of the amendment.
 
 III. DISCUSSION
 
 14
 A. Whether the agency violated its rule-making authority by adopting the new parole revocation procedures?
 
 
 15
 The plaintiffs make two arguments in this respect. First, the plaintiffs argue that parole authority only has power to make administrative rules and not broad legislative policy rules. Second, the plaintiffs argue that even if the parole authority has the power to make broad policy rules, the new regulations conflict with Ohio statutes.
 
 
 16
 The plaintiffs' first argument is unavailing. The Ohio parole authority is charged with administering all statutes relating to parole, see O.R.C. Sec. 2967.02, including determining whether a convict has violated parole. O.R.C. Sec. 2967.15. The parole authority has a long history of making regulations governing parole revocation. It should be noted that the plaintiffs did not contest the authority's power to issue the old regulations; they only challenged the application of the old regulations, arguing that a hearing to present mitigating circumstances was not a "meaningful hearing."
 
 
 17
 Second, plaintiffs argue that the new parole revocation procedures are inconsistent with Sec. 2967.15 of the Ohio Code, which requires that a parolee be given an individual parole revocation hearing when a parole officer has begun the parole revocation hearing on his own initiative. This case, however, does not involve a situation in which the parole officer has begun the parole revocation proceedings on his own initiative, or based on his charge or conduct, which has not resulted in a conviction.[4] Instead, this case is governed by a different provision of Sec. 2967.15.
 
 
 18
 The legislature has not specifically required an individual hearing when the basis for the parole revocation is a subsequent conviction. The statute provides only: "A convict who has been conditionally pardoned or a prisoner who has been paroled, and who, in the judgment of the adult parole authority, has violated the condition of his pardon or parole shall be declared a violator." O.R.C. Sec. 2967.15. Thus, the agency can "declare" a parolee to have been convicted of a subsequent violation while on a parole to be a "violator" either by administrative rule or through an individual hearing. The agency has chosen to address these cases by administrative rule, which is logical as those parolees who have been convicted of another felony while on parole have already had a trial or hearing to determine whether they actually committed the offense charged.[5] The agency has also concluded, by administrative rule, that no mitigating circumstances would overcome a subsequent conviction of another felony committed while on parole; thus, an individual hearing would be unnecessary. The agency's conclusion is a permissible one, as we have articulated previously in Sneed v. Donahue, 993 F.2d 1239 (6th Cir.1993). We find no merit, therefore, in plaintiffs' contentions in this regard.
 
 
 19
 B. Whether this court should reconsider its decision in Sneed v. Donahue.
 
 
 20
 Alternatively, plaintiffs ask us to reconsider our decision in Sneed v. Donahue, 993 F.2d 1239 (6th Cir.1993), in which we upheld the constitutionality of the Kentucky Parole statutes that eliminated any hearing on parole violation if the parolee was convicted of a new felony while on parole. The Kentucky and proposed Ohio parole revocation statutes are identical in that each statute eliminates agency discretion and directs revocation when a parolee has been convicted of a subsequent violation while on parole.
 
 
 21
 We held in Sneed that the parolee "had no clearly established right to a parole revocation hearing" once a subsequent parole violation conviction had been established and the law gave the parole agency no authority to consider further mitigating factors.
 
 
 22
 The Supreme Court in Morrissey [v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ] clearly instructed that the purpose of a final revocation hearing is to give the parolee an opportunity to present facts challenging the determination that he has violated a condition of parole and to present all circumstances surrounding the violation to the parole authority so that it may exercise its discretion in a fully informed manner. In this case, however, a revocation hearing would serve no such purposes. It is undisputed that Sneed violated a condition of his parole and has met all the factual predicates required by Ky.Rev.Stat. Sec. 439.352 before that section can be applied to him. In addition, it would be pointless for him to present mitigating circumstances to the Board since the Board has no discretion in determining whether to revoke his parole status....
 
 
 23
 Sneed, 993 F.2d at 1243 (emphasis in original). Our conclusion in Sneed is supported by Black v. Romano, 471 U.S. 606, 612, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636 (1985), in which the Supreme Court stated that
 
 
 24
 [n]either Gagnon [v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) ] nor Morrissey considered a revocation proceeding in which the factfinder was required by law to order incarceration upon finding that the defendant had violated a condition of probation or parole. Instead, those cases involved administrative proceedings in which revocation was at the discretion of the relevant decision maker. Thus, the Court's discussion of the importance of the informed exercise of discretion did not amount to a holding that the factfinder in a revocation proceeding must, as a matter of due process, be granted discretion to continue probation or parole.
 
 
 25
 Thus, Black teaches that Morrissey does not require that a parole authority be given discretion regarding when to revoke a parolee's parole status; rather, it simply requires that when such discretion is given, a revocation hearing is required. Sneed, 993 F.2d at 1243, 1244.
 
 
 26
 As pointed out also in Sneed, two other courts have reached this same result: United States v. Cornog, 945 F.2d 1504 (11th Cir.1991); Pickens v. Butler, 814 F.2d 237 (5th Cir.), cert. denied, 484 U.S. 924, 108 S.Ct. 284, 98 L.Ed.2d 245 (1987). We have no occasion (or authority) to revisit Sneed, and we decline plaintiffs' invitation to do so. Plaintiffs have, accordingly, shown no due process violation by the amended procedure adopted by defendants in Ohio. This procedure would apply to all situations in which a party or parolee was convicted of an offense after September 1, 1992.
 
 
 27
 C. Whether the new parole regulations violate the ex post facto clause of the United States Constitution.
 
 
 28
 As to the ex post facto challenge, we have considered this challenge in two non-binding parole guideline cases: Persky v. Edwards, 1986 WL 16754 at * 3 (6th Cir.); Ruip v. United States, 555 F.2d 1331, 1335 (6th Cir.1977). This case, by contrast, involves binding regulations that are mandatory after September 1, 1992, and eliminates any discretion in the parole agency to consider mitigating circumstances. To establish the claimed ex post facto violation, plaintiffs must establish that the regulation at issue (1) is retroactive in its application, and (2) "must disadvantage the offender affected by it." Miller v. Florida, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (quoting Weaver v. Graham, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)). See also Dale v. Haeberlin, 878 F.2d 930, 935 (6th Cir.1989), cert. denied, 494 U.S. 1058, 110 S.Ct. 1528, 108 L.Ed.2d 767 (1990). In this case, the agency action in amending the pertinent regulation has the same effect as legislation for the purpose of ex post facto consideration.
 
 
 29
 The focus in determining whether a new law violates the ex post facto clause is the time the offense was committed. Weaver, 450 U.S. at 31, 101 S.Ct. at 965. See also Persky v. Edwards, 1986 WL 16754 (6th Cir.) (quoting Forman v. McCall, 709 F.2d 852, 859 (3d Cir.1983)) ("[I]t is a fundamental principle of ex post facto jurisprudence that a court entertaining an ex post facto claim must focus upon the law in effect at the time of the offense for which a person is being punished."); Rodriguez v. United States Parole Comm'n, 594 F.2d 170, 176 (7th Cir.1979) ("[A]lthough parole eligibility is determined as of the date of sentencing for some purposes ... the ex post facto clause looks to the punishment annexed at the time the crime was committed.").
 
 
 30
 Next we look to whether the new regulations are more onerous than the regulations in effect at the time this subclass committed their initial crime. The defendants, relying on Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), argue that the change is merely a procedural change, and does not affect the substantive rights of the plaintiff class. See Dobbert, 432 U.S. at 293, 97 S.Ct. at 2298 ("Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto."). Although the distinction between substance and procedure might sometimes be elusive, "a change in the law that alters a substantial right can be ex post facto 'even if the statute takes a seemingly procedural form.' " Miller v. Florida, 482 U.S. at 433, 107 S.Ct. at 2453. Although the change here involves a procedural matter--the right to a hearing on revocation of parole--it still affects substantive rights attendant to parole revocation. Under the old regulations, parole would be revoked for the full amount of time unless the inmate could convince the parole authority that mitigating circumstances warranted mercy. Under the new procedures, there is no opportunity to present these mitigating circumstances. This procedural change affects substantive rights.
 
 
 31
 Thus, the new regulations may violate the ex post facto clause for a portion of the plaintiff class wherein described. The plaintiff class in this case has been defined broadly to include: "all persons whose parole was, or will be, revoked by the Ohio Adult Parole Authority through a so-called parole-violator recommissioned hearing because they have been convicted of a new felony committed while on parole." Obviously, the new regulations cannot be deemed to be an ex post facto violation as to those inmates whose paroles were revoked after a hearing under the old regulations, because the new parole regulations were not applied to them. Likewise, the statute is not ex post facto as to those who committed their "initial crime"[6] after the date of enactment (September 1, 1992). The district court's opinion, however, does not take into account those plaintiffs who committed their initial crime before the new regulations came into effect but whose parole revocation proceedings will be governed by the new regulations.[7] The new regulations are retroactive only to these members of this class.[8]
 
 
 32
 To the extent any plaintiff falls into this designated category, he is entitled under the old regulations to a meaningful hearing as described in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). We may only provide prospective injunctive relief in this present case to those inmates, if any, who had committed their initial crime prior to September 1, 1992, and whose parole may be revoked under the new regulations. Only these plaintiffs have a claim to injunctive relief.
 
 IV. CONCLUSION
 
 33
 In summary, we AFFIRM the district court in all respects, except as to those prisoners, if any, who committed initial offenses prior to September 1, 1992, but whose parole revocation procedures will be governed by the new regulations. Likewise, we REMAND the ex post facto claim for the district court to provide prospective injunctive relief as to those limited members of the plaintiff class described in this opinion.
 
 
 
 [1]
 Kellogg's probation had been revoked after he was convicted of new felonies (Attempted Grand Theft, Possession of Criminal Tools, Breaking and Entering, and Drug Abuse with prior drug law conviction) while on parole
 
 
 [2]
 Section 5120:1-1-19(1) provided: "In the event a releasee is convicted and sentenced on a new felony under Ohio law, it shall be conclusively presumed that Administrative Regulation 5120:1-1-12 has been violated."
 
 
 [3]
 It is apparent that the changes in the parole procedure rendered the plaintiffs' challenges to the original procedures moot. There is no need for this court to issue an injunction when the parole board has voluntarily changed its allegedly unconstitutional practices. See Cotton v. Mansour, 863 F.2d 1241, 1244-45 (6th Cir.1988), cert. denied, 493 U.S. 1042, 110 S.Ct. 835, 107 L.Ed.2d 831 (1990) (refusing to enjoin a social service agency's calculation of food stamp eligibility after the agency changed its practice to comply with federal regulations because "[t]here was simply no ongoing violation ... to enjoin"). See also Corey C. Watson, Comment, Mootness and the Constitution, 86 Nw.U.L.Rev. 143, 147 (1991). Any remedy that a member of the class has for the unconstitutional application of the old parole procedures must, in the future, be obtained through habeas corpus
 
 
 [4]
 The parole authority does conduct an individual hearing in these circumstances
 
 
 [5]
 Even under the old regulations, the parolee did not receive an individual hearing on every issue, because he was conclusively presumed to be a parole violator if he had been convicted of another felony while on parole. The only issue at the hearing was whether mitigating circumstances warranted leniency in revoking his parole
 
 
 [6]
 We use the term "initial crime" to refer to the crime from which the inmate has been paroled. It does not refer to the subsequent violation while on parole
 
 
 [7]
 The district court concluded that the "defendants have not retroactively applied [the new regulations] to the subclass of plaintiffs whose parole had been earlier revoked...."
 
 
 [8]
 At oral argument, the Ohio Attorney General's office stated that there had been no such actions taken