OPINION and JOURNAL ENTRY
{¶ 1} On January 5, 2004, Petitioner, Timothy W. Richards, Jr., filed with this court a petition seeking a writ of habeas corpus. Respondent, Michelle Eberlin, filed a motion to dismiss the petition on February 10, 2004. Petitioner then filed for summary judgment on April 9, 2004. For the following reasons, the motion for summary judgment is denied, the motion to dismiss is granted and the writ is denied.
 FACTS {¶ 2} On September 19, 1984 Petitioner was sentenced to five (5) to twenty-five (25) years incarceration for an aggravated burglary in Cuyahoga County case number 188454. On September 1, 1987, Petitioner was granted furlough. Petitioner was declared a furlough violator on November 23, 1987 and had his furlough revoked as a result. On March 10, 1989, Petitioner was granted parole. While on parole, Petitioner pled guilty to burglary with an aggravated felony specification and sentenced to eight (8) to fifteen (15) years incarceration, with eight (8) years actual incarceration, on September 1, 1989 in Cuyahoga County case No. 239340. Petitioner was again granted parole on March 8, 1999. He was subsequently sentenced to six (6) years incarceration after being found guilty of felonious assault on August 8, 2000 in Cuyahoga County case No. 390487. The six (6) year sentence was ordered to run concurrently with the previously mentioned sentences.
 {¶ 3} After the imposition of this last sentence, Petitioner was sent two (2) notices informing him that he was entitled to a mitigation hearing under Kellogg v. Shoemaker (S.D. Ohio E.D. 1996), 927 F. Supp. 244. The notices were sent on September 25, 2000 and October 11, 2000. On October 18, 2000 Petitioner executed a waiver of the right to this hearing.
 {¶ 4} Petitioner successfully appealed his 2000 conviction and sentence, which was reversed and remanded on September 20, 2001. The matter was retried, and on May 1, 2002 Petitioner was again convicted and sentenced to six (6) years to run concurrent with his previous sentences. This decision was affirmed on appeal by the Eighth District Court of Appeals. Petitioner filed a Notice of Appeal and a Motion for a Delayed Appeal with the Supreme Court on January 5, 2004.
 {¶ 5} On January 5, 2004 Petitioner also filed this petition for habeas corpus. The gist of Petitioner's argument as to why he is being unlawfully held is as follows: first, he claims that because the first and second convictions, cases 188454 and 239340 were not explicitly ordered to be run consecutively, the terms of incarceration ran concurrently. Next, Petitioner asserts that his parole was never revoked again when he was re-sentenced for the latest offense in May of 2002. Finally, Petitioner argues that when he was sentenced to a term of six (6) years in the most recent case, case number 390487, because the term was slated to run concurrent to the older sentences in cases 188454 and 239340, for which he had already served more than six (6) years total for those cases (which he claims were run concurrently), the sentence for the most recent conviction, 390487, was "retroactively served" and thus has already expired. Each of these contentions will be addressed separately below.
 LAW {¶ 6} Before addressing Petitioner's grounds for seeking the writ, this court must attend to Respondent's contention that Petitioner failed to meet the mandatory requirements for state habeas corpus actions set forth in R.C. 2969.21 through 2969.27. First, Respondent charges that Petitioner failed to both file an affidavit of indigency and a certified account statement. In his response to Respondent's motion to dismiss, Petitioner does not deny this allegation, but rather attempts to shift the blame to Respondent. Petitioner states that he did not file the affidavit "because the Respondent's (sic) failed to provide petitioner with a certified account statement of his balance for the six (6) months preceeding (sic) the filing of this action. * * * Petitioner has suffered numerous acts of discrimination as a result of utilizing the Inmate Grievance Procedure, and from exercising his right to access the courts. Petitioner can and will provide this Honorable Court with numerous dispositions (sic) from the Chief Inspector's Office, (sic) of how the Respondents have deliberately interfered and hindered Petitioner's ability to petition a court of record, in the event this court orders an evidentiary hearing." However, despite his assertions, Petitioner fails to substantiate his claims. Rather, on February 27, he requested this court allow him to file his affidavit "within a reasonable amount of time." Petitioner then filed his affidavit of indigency on March 1, 2004, nearly two (2) months after filing his original petition.
 {¶ 7} The Supreme Court has denied belated attempts to file documents required by R.C. 2969.25(A) in order to commence a civil action against a government entity or employee. In rejecting R.C. 2969.25(A) filings that are not submitted simultaneously with the petition, the Court pointed out that the particular section of the statute "requires that the affidavit be filed `[a]t the time that an inmate commences a civil action orappeal against a government entity or employee.' (Emphasis added.)" Fuqua v. Williams (2003), 100 Ohio St.3d 211, at ¶ 9. Respondent argues that this interpretation also holds true for R.C. 2969.25(C). However, the text of that section of the statute reads, "If an inmate who files a civil action or appeal against a government entity or employee seeks a waiver of the prepayment of the full filing fees assessed by the court in which the action or appeal is filed, the inmate shall file with the complaint ornotice of appeal an affidavit that the inmate is seeking a waiver of the prepayment of the court's full filing fees and an affidavit of indigency." R.C. 2969.25(C). Thus, the additional imposition of filing at the same precision in timing stressed inFuqua is not imposed upon one seeking to file in accord with R.C. 2969.25(C).
 {¶ 8} Next, Respondent alleges that Petitioner failed to exhaust institutional grievance processes available to him prior to filing this action. Respondent claims that "Petitioner's claim of an incorrect sentence calculation is subject to the grievance system at his institution." However, Petitioner is not simply claiming that his sentence was improperly calculated, a claim that is addressable on direct appeal or by post conviction relief and thus not cognizable in a petition for habeas corpus. SeeHeddleston v. Mack (1998), 84 Ohio St.3d 213, 213. Rather, Petitioner alleges that his parole was never revoked and his only valid sentence has already been served, issues which are proper for habeas review.
 {¶ 9} Next we will review Petitioner's basis for his complaint. First Petitioner argues that his first two (2) sentences were to run concurrent. Petitioner contends that because the second journal entry did not explicitly order the second sentence to run consecutive to the first, it must be construed as running concurrent. To support this argument, Petitioner looks to Hamilton v. Adkins (1983),10 Ohio App.3d 217, which he accurately quotes as stating, "The imposition of consecutive sentences could only be accomplished if the trial court specified that the sentences were to be run consecutively. * * * Where there is an ambiguity in the language as to whether the sentences are to be served concurrently or consecutively, a defendant is entitled to have the language construed in his favor." Id. at 217-218. However, Petitioner fails to follow through on the court's reasoning, which relies on former R.C.2929.41(B)(1), whereby the court must specify that a sentence is to be served consecutively. In Adkins, the reviewing court ruled that the trial court's failure to specify consecutive sentences in accordance with former R.C. 29292.41(B)(1) at the time of sentencing resulted in a lack of evidence of such intent, and thus the sentences were deemed to run concurrent.
 {¶ 10} However, former R.C. 2929.41(B)(1) did not apply to the current case. The portion of the statute relevant to the instant matter was former R.C. 2929.41(B)(3), which mandates that "A sentence of imprisonment shall be served consecutively to any other sentences of imprisonment, in the following cases: * * * (3) When it is imposed for a new felony committed by a probationer, parolee, or escapee."[1] Because Petitioner was on parole from his original sentence when he was sentenced for his second felony in 1989, former R.C. 2929.41(B)(3) was controlling and mandated consecutive sentences, eliminating any possible ambiguity such as that found in Adkins.
 {¶ 11} Petitioner also contends that his parole was never revoked after his third and most recent conviction. Petitioner specifically states that following the August 8, 2000 conviction and, after that sentence was reversed and the offense retried, following the May 1, 2000 reconviction, the Adult Parole Authority failed to provide Petitioner with a notice of alleged parole violations, failed to conduct a revocation hearing to determine if there was cause to revoke parole, and failed to provide Petitioner an opportunity to present evidence in a mitigation hearing. Thus, he reasons, his parole was never revoked.
 {¶ 12} Petitioner looks to the protections provided byMorrissey v. Brewer (1972), 408 U.S. 471, wherein the United States Supreme Court declared that due process entitles a parolees to a minimum of the following prior to parole revocation: 1) written notice of the claimed violation, 2) disclosure to the parolee of evidence against him, 3) opportunity to be heard in person and to present witnesses and evidence, 4) the right to confront and cross examine witnesses (unless good cause is lacking), 5) a neutral and detached hearing body, and 6) a written statement by the fact finders relaying the reasons for their determination and the evidence relied on. Id. at 488-489.
 {¶ 13} The court in Morrissey went on to further state, "Obviously a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime." Id. at 490. To this extent, the Sixth Circuit in Kellogg v. Shoemaker,46 F.3d 503 (6th Cir. 1995), held that the right to a revocation hearing afforded by Morrissey only triggers when the parole authority has discretion in determining parole status. Id. at 508. Thus, there was no right to a hearing when "a subsequent parole violation conviction had been established and the law gave the parole agency no authority to consider further mitigating factors." Id., citing Sneed v. Donahue, 993 F.2d 1239 (6th Cir. 1993).
 {¶ 14} Yet the court also determined that to apply the holding in Kellogg to persons convicted of a first offense prior to September 1, 1992[2] would be a violation of the ex post facto clause. Consequently, those parolees who committed their first crime, the crime for which they are on parole, prior to September 1, 1992 are still entitled to a parole revocation hearing subsequent to being convicted of a crime as dictated by the "old" Ohio Adult Parole Authority provision. Kellogg,46 F.3d at 510.
 {¶ 15} As was previously stated, Petitioner contends that he was not afforded any of these rights after the 2000 conviction or after the 2002 retrial. However, Respondent has produced documents indicating otherwise. Attached to Respondent's motion are documents labeled exhibits K, L and M, which are, respectively: K) a letter dated September 25, 2000 giving notice of a mitigation hearing "under the Kellogg consent decree" set for October 10, 2000 and explaining Petitioner's various rights therein; L) a letter dated October 11, 2000 giving notice of the mitigation hearing, which was re-set for October 18, 2000 and again explaining Petitioner's various rights; and M) a form titled "WAIVER OF KELLOGG MITIGATION HEARING," signed by Petitioner and dated October 18, 2000. Thus, it is clear that Petitioner was indeed provided with notice of his right to a hearing in 2000, and in fact waived that right.
 {¶ 16} The question remains, however, whether this revocation and notice thereof withstood the reversal, retrial, and reconviction in 2002. The case sub judice is analogous to Flenoyv. Ohio Adult Parole Auth. (1990), 56 Ohio St.3d 131, wherein Flenoy was indicted for murder in 1981 while on parole. While being held at the Cuyahoga County Jail, Flenoy received an onsite hearing with the Adult Parole Authority. The hearing officer determined there was probable cause to believe that Flenoy had committed the murder he was accused of, and thus Flenoy was declared a parole violator and entitled to a final hearing to determine mitigating circumstances. Before that final hearing could take place, Flenoy was convicted of the murder and was sentenced to fifteen (15) years to life in 1982. Beyond having already been declared a parole violator, the murder conviction triggered the automatic parole revocation authorized under Ohio law for parolees who commit new felonies while on parole. After the murder conviction, Flenoy signed a form waiving his right to the mitigation hearing and stating, "I further understand that I have violated my parole by the conviction of a new felony * * *."
 {¶ 17} In 1988, Flenoy was granted federal habeas corpus relief from his murder conviction. Still in jail after this decision, Flenoy was retried for the murder and was subsequently reconvicted and sentenced to fifteen (15) years to life again. Contemporaneous to the new trial, Flenoy had filed writs of mandamus and habeas corpus in the state court, arguing that the grant of habeas corpus relief "fatally undercut the parole revocation stemming from that conviction" and thus required the Adult Parole Authority to either provide another parole revocation hearing or release him. Id. at 132. The Supreme Court rejected the argument of the Adult Parole Authority that Flenoy's reconviction disposed of any concerns regarding revocation of parole under the overturned conviction, saying:
 {¶ 18} "We agree that Flenoy's reconviction made a revocation hearing unnecessary. See Ohio Adm. Code 5120:1-1-19(A)(1). But once the original revocation was voided, the APA was obliged to give him a hearing within a reasonable time. Coleman v. Stobbs
(1986), 23 Ohio St.3d 137. If an unreasonably long period went by before a hearing either was granted or became unnecessary, the APA lost its right to revoke Flenoy's parole. See United Statesex rel. Sims v. Sielaff (C.A. 7, 1977), 563 F.2d 821, 828
(quashing parole violator warrant is only possible remedy where parole hearing has been unreasonably delayed); Hamilton v.Keiter (C.P. 1968), 16 Ohio Misc. 260, 264." Id. at 134.
 {¶ 19} As a result of the failure to grant Flenoy a hearing after he was granted habeas corpus relief, the Supreme Court held that if his parole was improperly revoked, he was entitled to a credit of eight and one half months against his sentence from the murder conviction, or the period of time that passed between the grant of habeas corpus relief and the reconviction, the time during which he was held without cause. See Flenoy,
56 Ohio St.3d at FN 1. In light of this, Petitioner should be credited 177 days, from accounting for the time not already credited that passed between reversal and reconviction.[3]
 {¶ 20} As to Petitioner's claim that because his six (6) year sentence was retroactively served because it was set concurrent to a sentence for which more than six (6) years were already served, this is simply a misunderstanding about what concurrent means. Petitioner seems to argue that concurrent means time served for one sentence can be applied against another. For example, under Petitioner's understanding, a person could be serving a ten (10) year sentence, sentenced to a concurrent ten (10) year sentence after he has served nine and a half (9 1/2) years of the first sentence, and only have to serve the remaining six (6) months to complete both sentences. Such a result would be unjust.
 {¶ 21} Concurrent sentences are defined as "Two or more sentences of jail time to be served simultaneously." Black's Law Dictionary (7 Ed. 1999) 1367. In other words, a person need not finish serving the first sentence before the time for the second sentence can be served, as is the case with consecutive sentences. For example, in the hypothetical situation above, the person could begin serving the second ten (10) year term upon sentencing rather than having to wait the six (6) months for the first term to expire.
 {¶ 22} Therefore, when Petitioner was sentenced to six (6) years concurrent to his prior sentences, the sentences were not nullified upon imposition. Rather, he could begin serving the six (6) years immediately and not have to wait until the previous two (2) sentences have expired to serve the third. If the intent were otherwise, the court would have given him credit for time-served on the earlier offenses.
 {¶ 23} This does not complete the inquiry, however, as the issue remains that parole has yet to be revoked since the reversal of the first conviction. The Supreme Court has addressed the issues presented in this scenario, stating,
 {¶ 24} "A court should apply a two-part test in determining whether the delay of the Adult Parole Authority, in not commencing a final parole revocation hearing, entitles an alleged parole violator to habeas corpus relief. First, it must be determined whether the delay was unreasonable. * * * Second, if the delay is found to be unreasonable, it must be determined whether the delay somehow prejudiced the alleged parole violator. The court must weigh any prejudice to the alleged parole violator in light of the interests protected by the `reasonable time' requirement of R.C. 2967.15 and Ohio Adm. Code 5120:1-1-19(A)."Coleman v. Stobbs (1986) 23 Ohio St.3d 137, 139.
 {¶ 25} The court further instructed as to how the first factor, the reasonableness factor, may be determined by balancing three (3) factors, which are: 1) the length of the delay, 2) the reason for the delay, and 3) the alleged parole violator's assertion of the right to a hearing within a reasonable time. Id.
 {¶ 26} In calculating the first factor, the delay in holding a hearing, this court looks to State ex rel. Taylor v. OhioAdult Parole Authority, wherein the following was stated that "[n]either due process of law nor R.C. 2967.15's or former Ohio Adm. Code 5120:1-1-19(A)'s `reasonable time' requirement compels a final revocation parole hearing while an alleged parole violator is imprisoned pending prosecution for, or after conviction of, another crime." (Citation omitted). Id. at 128. Thus, the only time that need be considered in this determination of reasonableness is that time during which Petitioner was incarcerated solely for the alleged parole violation. As was previously stated, Petitioner's conviction was reversed and remanded on September 20, 2001 and he was reconvicted and resentenced on May 1, 2002. Thus, the length of time not stemming from the reconviction that Petitioner was held without a hearing was 223 days.
 {¶ 27} The second factor, the reason for the delay, cannot be determined by this court, as no reason is put forth. As this court is not aware of what caused this delay, this factor may be assumed to weigh in favor of Petitioner. The third factor the alleged parole violator's assertion to the right to a hearing. This third factor weighs in favor of Respondent, for although Petitioner claims to have made multiple requests for a mitigation hearing after the reconviction, there is nothing in the record to corroborate this claim. Thus the first assertion of the right to a hearing this court is aware of is the present writ, filed over a year and a half after the reconviction.
 {¶ 28} Taking the above stated factors regarding the reasonableness of the Adult Parole Authority into consideration, this court must next balance that reasonableness with the prejudice that the delay imposed upon the defendant. Coleman,23 Ohio St.3d at 139. In determining the possible prejudice a delay would have on an alleged parole violator, the court inColeman were mindful of the following interests: (1) preventing oppressive prehearing incarceration, (2) minimizing anxiety and concern of the subject, and 3) limiting the possibility that the delay will impair the subject's defense at the hearing once it is held. Id., citing Hanahan v. Luther (C.A. 7, 1982),693 F.2d 629, 635, certiorari denied (1983), 459 U.S. 1170.
 {¶ 29} In applying these factors to the present case, it appears that the over six (6) months of incarceration while awaiting retrial without having parole properly revoked was oppressive. Regarding the second factor, there is no readily ascertainable fact to support the notion that the incarceration would have caused Petitioner excessive anxiety. Having been in prison for nearly all of the past decade and a half, this was not Petitioner's first exposure to prison. His conviction was not overturned on a substantive matter or a question of evidence, but on an issue regarding proper waiver of counsel procedures. He failed to request relief in this intervening time frame. Thus, there is no reason to believe that this time has caused excessive anxiety to Petitioner. Finally, evaluating the third factor, there is nothing to indicate that the intervening time period spent in prison impaired his defense at a hearing, as Petitioner waived the hearing after the first trial and has not indicated to this court that any defense, evidence, or witness has been lost or compromised since the original waiver was executed.
 {¶ 30} Thus, despite oppressive incarceration for the time between reversal and reconviction, the weight of the facts before this court indicates that the Adult Parole Authority has not forfeited the right to immediately hold a final revocation hearing for Petitioner. However, once parole is formally revoked, Petitioner's sentence in the first two convictions should be credited against the time served in the interim, as the current six (6) year sentence was set to run concurrent with those two (2) already in existence at the time of the May 2002 sentencing.
 {¶ 31} The petition for writ of habeas corpus is dismissed. However, as noted above, Petitioner is entitled to a timely hearing regarding the revocation of his parole.
 {¶ 32} Costs taxed against Petitioner. Final order. Clerk to serve notice as provided by the civil rules.
Petition dismissed.
Waite, P.J., Donofrio and Vukovich, JJ., concur.
[1] 1 R.C. 2929.41 was subsequently amended by 1995 So. 2, which took effect July 1, 1996 and is thus inapplicable to Petitioner's first two convictions, both of which occurred prior to that date.
[2] The controlling Ohio Adult Parole Authority provisions were enacted in new form on this date.
[3] Petitioner's conviction was reversed and remanded on September 20, 2001, and he was subsequently reconvicted and resentenced on May 1, 2002. However, without reference as to how they arrived at the given dates, the court credited with Petitioner with jail time credit, including the period from March 15, 2002 to May 1, 2002, and thus that time will not be counted in this calculation.