OPINION *Page 2 
{¶ 1} Although originally placed on our accelerated calendar, we have elected pursuant to Loc. R. 12(5) to issue a full opinion in lieu of a summary journal entry.
 {¶ 2} Petitioner-appellant, Alfred Johnson (hereinafter "Johnson"), appeals the Marion County Court of Common Pleas' judgment denying his petition for writ of habeas corpus. For the reasons that follow, we affirm.
 {¶ 3} In January 1991, Johnson was convicted of two counts of robbery and one count of aggravated robbery. The trial court sentenced Johnson to a prison term of thirteen to fifty-five years. Johnson was released on parole on September 7, 2004.
 {¶ 4} In the fall of 2004, Johnson was arrested in Lucas County, Ohio, and was charged with failure to comply with an officer. While his criminal proceedings were pending in Lucas County, a parole release violation hearing was held on January 5, 2005. At this hearing, Johnson was found to have committed the following rule violations: (1) operating a motor vehicle without a valid operator's license; (2) being in possession and/or having under his control a vehicle that had been reported stolen; and (3) failure to obey a police officer while operating a vehicle. Based on the evidence and testimony presented, the hearing officer found Johnson guilty of violating the terms and conditions of his parole. *Page 3 
As a sanction for these violations, Johnson was ordered to successfully complete 90 days of electronic monitoring (if he was not sentenced for pending felony behavior), and to obtain a mental health assessment. Johnson successfully completed the 90 day electronic monitoring.
 {¶ 5} On May 24, 2005, in the above Lucas County case, Johnson pled guilty to attempted failure to comply, and on July 18, 2005, the trial court placed Johnson on community control for three years and reserved a prison sentence of seventeen months.
 {¶ 6} On August 24, 2005, Johnson was charged with violating the terms and conditions of his parole by possessing a firearm. A parole violation hearing was held in September of 2005, and Johnson was found guilty of violating the terms and conditions of his parole. As a sanction for the violation, Johnson's parole was revoked and he was incarcerated until he was released on parole on May 1, 2006.
 {¶ 7} Subsequent to his release on parole, Johnson was charged with violating the terms of his community control. Johnson admitted the community control violation, and on November 3, 2006, the trial court revoked Johnson's community control and sentenced Johnson to serve the prison term of seventeen months on the attempted failure to comply conviction. *Page 4 
 {¶ 8} Because he was recommitted to the Ohio Department of Rehabilitation and Correction to serve a prison term for a felony offense he committed while he was on parole, Johnson's parole was subject to revocation under Ohio Administration Code § 5120:1-1-21; moreover, because Johnson was a member of the Kellogg class, the parole board was required to hold a mitigation hearing. See Kellogg v.Shoemaker (S.D.Ohio 1996), 927 F.Supp. 244.
 {¶ 9} On November 28, 2006, Johnson was notified that he had a right to have a mitigation hearing to determine whether revocation of his parole was appropriate. The Kellogg mitigation hearing was held on November 28, 2006, wherein the hearing officer recommended that Johnson's parole not be revoked. However, the parole board did not accept the hearing officer's recommendation and revoked Johnson's parole on January 17, 2007.
 {¶ 10} On August 8, 2008, Johnson filed a habeas petition in the Marion County Court of Common Pleas, alleging that the procedures involved in his 2006 Kellogg hearing had not been proper. Respondent-appellee, the State of Ohio (hereinafter "respondent"), filed a motion to dismiss Johnson's petition claiming that the trial court lacked jurisdiction pursuant to the consent decree issued in Kellogg v.Shoemaker, 927 F.Supp. 244. The trial court found that the availability of the federal remedy in Kellogg did not deprive it of the ability to determine whether Johnson was entitled to habeas relief as a result of the alleged undue delay *Page 5 
in holding the Kellogg hearing. Thus, on November 4, 2008, respondent filed a return of writ arguing that there was no undue delay, and in the alternative, if so, the delay had not prejudiced Johnson.
 {¶ 11} On December 1, 2008, the trial court issued an order directing the parties to file supplemental memorandum addressing the sequence of events set forth in the order and to answer four questions raised by the court. The parties filed their respective responses. On December 30, 2008, the trial court dismissed Johnson's petition for habeas relief.
 {¶ 12} Johnson now appeals and raises two assignments of error. Because Johnson's argument is the same under each of his assignments of error, we will address them together.
 ASSIGNMENT OF ERROR NO. I THE COURT FAILED TO SEE THAT APPELLANT'S RETURN TO THE PRISON SYSTEM IS THE SECOND TIME WHILE ON PROBATION OR PAROLE, FAILED TO SEE THAT APPELLANT HAS BEEN TWICE SANCTIONED FOR THE SAME IDENTICAL CONDUCT, AND THEREBY FAILED TO RECOGNIZE THAT APPELLANT IS HELD IN VIOLATION OF LAW.
 ASSIGNMENT OF ERROR NO. II THE COURT ERRED IN FAILING TO FIND THAT APPELLANT IS ILLEGALLY HELD BY ODRC WITHOUT A TRUE AND VALID SENTENCE OF COMMITMENT BY ANY COMPETENT COURT IN VIOLATION OF HIS RIGHT TO DUE PROCESS AND IN FLAGRANT VIOLATION OF HIS RIGHT TO BE FREE FROM DOUBLE JEOPARDY, AND *Page 6 SHOULD HAVE GRANTED APPELLANT'S PETITION FOR HABEAS CORPUS RELIEF AND ORDERED APPELLEE TO RELEASE APPELLANT IMMEDIATELY AND FORTHWITH.
 {¶ 13} In his assignments of error, Johnson argues that the trial court used the wrong offense for determining whether his requiredKellogg mitigation hearing had been unreasonably delayed. Johnson claims that the trial court could not have used his attempted failure to comply violation as the basis for its determination because he had already been sanctioned for that violation. Johnson argues that using the attempted failure to comply offense to justify his current detention and revocation amounts to a violation of double jeopardy. Overall, Johnson claims that his required Kellogg mitigation hearing was unreasonably delayed by fourteen months, and thus, he is entitled to be released.
 {¶ 14} Respondent argues that this Court should decline to rule on this appeal because we lack jurisdiction over issues regarding the procedures involved in a Kellogg hearing. However, respondent also claims that if this Court does decide it has jurisdiction, the trial court did not error in using the community control revocation on Johnson's attempted failure to comply offense as the triggering mechanism for his Kellogg mitigation hearing. As such, there was only a delay of 25 days, which respondent claims was reasonable, but even if it was unreasonable, respondent further argues that it did not prejudice Johnson. *Page 7 
 {¶ 15} Before addressing Johnson's grounds for seeking the writ, we must first address respondent's argument involving this Court's jurisdiction. Kellogg concerned a class action brought by inmates in the Ohio prisons to contest the constitutionality of new rules which the Ohio Adult Parole Authority had adopted with respect to parole revocations. Kellogg v. Shoemaker (C.A.6, 1995), 46 F.3d 503, 505. Under the old rules, if an alleged parole violation was based on a conviction for an offense which was committed during the parole period, the parolee was entitled to a hearing during which he could present evidence concerning any mitigating factors. Id. However, under the new rules, parolees who committed new felonies while on parole would be subject to revocation without having a right to a mitigation hearing.[1] Id. at 506.
 {¶ 16} The United States Court of Appeals for the Sixth Circuit held that eliminating the mitigation hearing did not violate a new parolee's due process rights when the hearing officer did not have any discretion in deciding whether to revoke his parole. Id. at 507-08. However, the Sixth Circuit further held that the new rules could not be applied retroactively because the changes did affect current parolees' substantive rights. Id. at 509-10. Thus, the Sixth Circuit concluded that those parolees who committed their "initial" crimes prior to the effective date of *Page 8 
the new rules (Sept. 1, 1992), were still entitled to a mitigation hearing if they committed a new felony which would subject them to revocation. Id.
 {¶ 17} After the United States Supreme Court deniedcertiorari, the parties returned to the United States District Court for the Southern District of Ohio, Eastern Division, and entered into a consent decree, which was incorporated into a published opinion.Kellogg v. Shoemaker (S.D.Ohio 1996) 927 F.Supp 244. The consent decree stated that the Adult Parole Authority would develop procedures to identify those parolees whose parole had been revoked after September 1, 1992, but who remained entitled to a mitigation hearing because they had committed their "initial" crimes before the effective date of the new rules. Id. Furthermore, under Part VI of the decree, entitled "Continuing Jurisdiction and Modification," it further stated: "The parties agree that it may be appropriate that this Consent Decree be modified or terminated in the future, with the approval of the Court. The Court retains jurisdiction over this Consent Decree for the purpose of its enforcement." Id. at 248.
 {¶ 18} It is this particular section in the consent decree which respondent asserts, without citation, deprives this Court of habeas corpus jurisdiction. Respondent claims that any dispute that relates to the Kellogg class and revocation issues must be presented to the federal court. We disagree. While the federal court may retain jurisdiction to deal with issues relating to the actual consent *Page 9 
decree, we do not believe that the consent decree was intended to deprive state courts of habeas jurisdiction. In fact, the Court of Appeals for the Fourth District addressed and ultimately rejected this same argument presented by the Ohio Adult Parole Authority:
 Under, the consent decree, petitioner is entitled to a hearing with certain due-process safeguards. Thus, he could clearly have sought a hearing by application to the federal court. On the other hand, in this habeas corpus action, petitioner is seeking release from confinement because a hearing was not held, not merely a hearing. Thus, we find that the availability of the federal remedy to get a hearing does not preclude this action for release if one is denied. This court cannot be divested of its historic jurisdiction to issue writs of habeas corpus so easily. Nor does the fact that a hearing has now been held render moot the issue of whether the delay in holding a hearing entitles petitioner to release from custody. The issue of petitioner's right to release for an unreasonable delay remains.
Jackson v. Ohio Adult Parole Authority, 4th Dist. No. 03CA12, 2003-Ohio-3996,
¶ 5. Moreover, this Court notes that two other districts have similarly considered cases involving the Kellogg class and mitigation hearing issues. Richards v. Eberlin, 7th Dist. No. 04-BE-1,2004-Ohio-2636; Alford v. Tate (June 15, 1999), 7th Dist. No. 99-BE-22;State ex rel. Spann v. Mitchell (Nov. 28, 1997), 11th Dist. No. 97-T-0102. Therefore, we find that this Court has jurisdiction to determine whether Johnson has a right to release for an unreasonably delayed and/or inappropriate Kellogg hearing. *Page 10 
 {¶ 19} With respect to Johnson's assignments of error, this court reviews a trial court's decision regarding a habeas corpus petition under an abuse of discretion standard. Charlton v. Money (August 7, 1997), 3d Dist. No. 9-97-12, at *2, citing Dragojevic-Wiczen v.Wiczen (1995), 101 Ohio App.3d 152, 155, 655 N.E.2d 222. An abuse of discretion constitutes more than an error of law or judgment; rather, it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 20} In habeas corpus cases, the burden of proof is on the petitioner to establish his right to release. Halleck v. Koloski (1965),4 Ohio St.2d 76, 77, 212 N.E.2d 601; Yarbrough v. Maxwell (1963), 174 Ohio St. 287, 288, 189 N.E.2d 136. As it relates to Johnson's case, once the parole board was required to provide Johnson a mitigation hearing pursuant to the consent decree in Kellogg, he was entitled to a hearing within a reasonable time. Flenoy v. Ohio Adult Parole Authority (1990),56 Ohio St.3d 131, 134, 564 N.E.2d 1060, citing Coleman v. Stobbs
(1986), 23 Ohio St.3d 137, 491 N.E.2d 1126. If an unreasonably long period occurred before a hearing was provided to Johnson, then the parole board would have lost its right to revoke Johnson's parole. Id., citing United States ex rel. Sims v. Sielaff (C.A.7, 1977),563 F.2d 821, 828 (quashing parole violator *Page 11 
warrant is only possible remedy where parole hearing has been unreasonably delayed); Hamilton v. Keiter (C.P. 1968),16 Ohio Misc. 260, 264, 241 N.E.2d 296.
 {¶ 21} Here, neither party disputes that Johnson falls within the designated Kellogg class and was entitled to a mitigation hearing before his parole was revoked. Johnson did receive a mitigation hearing, but the issue presented to this Court is whether the delay that occurred was unreasonable. Johnson argues that the delay of his mitigation hearing was unreasonable since the trial court erred in using his community control violation on his attempted failure to comply conviction as the triggering mechanism for his mitigation hearing. Therefore, to resolve the unreasonable delay issue, this Court must first determine what event specifically triggered the necessity for Johnson's mitigation hearing. Johnson argues that the trial court could not have used his community control violation on his attempted failure to comply conviction as the basis for his mitigation hearing. Johnson essentially claims that he had already been sanctioned by the parole board on that conviction, and thus, it could not have been used again as the basis of his parole revocation.
 {¶ 22} First of all, we note that at the outset, there was some confusion as to timeline of events and the triggering event for Johnson's mitigation hearing. After the trial court denied respondent's motion to dismiss for lack of jurisdiction, the *Page 12 
trial court ordered the parties to file supplemental memorandums to address certain issues. (Dec. 1, 2008 Order to File Supp. Memos). In its order, the trial court noted its understanding on the timeline of events concerning the case, but stated that it was unclear as to which event[2] triggered Johnson's right to a mitigation hearing. (Id.). After the parties submitted their respective memoranda, the trial court issued a judgment with an attached memorandum of opinion, in which it stated:
 When this Court filed its Order to File Supplemental Memorandum in this Case, the Court was not sure of what the triggering incident was for the Kellogg v. Shoemaker hearing which was held in November, 2006. It appeared to the Court that the triggering incident was either the parole violation of August 2005, where the Petitioner's parole was revoked for possessing a firearm, or the dirty urine test which occurred in late 2006.
 After reviewing the Supplemental Memorandum filed by the parties, it is now apparent that neither of these events was the triggering incident; rather, the triggering incident of the Kellogg v. Shoemaker mitigation hearing was that the Petitioner was committed to the Ohio Department of Rehabilitation and Correction to serve a prison term for a felony sentence imposed by an Ohio court for an offense the Petitioner committed while on parole. The Petitioner was sentenced to prison in early November, 2006, by the Lucas County Common Pleas Court for violating his community control sanctions. The community control sanction violation was for having a dirty urine test. However, it was not the dirty urine test itself which triggered the Kellogg hearing; rather, it was the revocation of community control sanctions and the sentencing of the Petitioner to prison by the Lucas County Common Pleas Court in November, 2006, while the Petitioner was still under parole for his original *Page 13 charges, which triggered the Kellogg v. Shoemaker mitigation hearing later in November, 2006.
(Dec. 30, 2008 Memo of Opinion). After a review of the relevant Ohio Administrative rule, we find that the trial court did not error in its decision.
 {¶ 23} The consent decree published in the District Court's opinion applies "to the class of persons who are paroled for an offense committed prior to September 1, 1992, who are subsequently convicted of committing a felony while on parole, and whose parole is subject to revocation under Section 5120: 1-1-21 of the Ohio Administrative Code."Kellogg v. Shoemaker (1996), 927 F.Supp. 244, appendix. This Ohio Administrative Code provision states that:
 [t]he adult parole authority shall revoke the release of any releasee who is recommitted to the department of rehabilitation and correction to serve a prison term for a felony sentence imposed upon him by any court in Ohio for an offense he committed while on any release granted by the adult parole authority or while serving a period of intermediate transitional detention pursuant to rule 5120-11-12 of the Administrative Code or serving a period of parole supervision pursuant to rule 5120-11-19 of the Administrative Code.
Ohio Adm. Code 5120: 1-1-21(A). Based on the plain language of this rule, we believe that the trial court was correct in using the revocation of Johnson's community control on his attempted failure to comply offense as the triggering event for his mitigation hearing. The parole violation for possession of a firearm was not a proper triggering event because Johnson was never indicted with a felony charge, and thus, was never given a felony sentence for the possession of a *Page 14 
firearm. Rather, Johnson was only charged and found to have been in violation of his parole conditions (only a probable cause standard) and sentenced for a parole violation. Moreover, the community control violation by itself was not a proper triggering event for the same reasons. However, the revocation of his community control and the reinstatement of his felony sentence on his attempted failure to comply conviction was the proper triggering event. This is because it was at this time when Johnson was ultimately "recommitted to the department of rehabilitation and correction to serve a prison term for a felony sentence imposed upon him by any court in Ohio for an offense he committed while" he was on parole. See Ohio Adm. Code 5120: 1-1-21(A)
 {¶ 24} Therefore, under the terms of the Kellogg consent decree, when the Lucas County Court of Common Pleas revoked Johnson's community control on his attempted failure to comply conviction and reinstated his prison sentence on November 3, 2006, Johnson's right to a mitigation hearing was triggered.
 {¶ 25} Johnson argues that this event would amount to a violation of double jeopardy since the parole board had already sanctioned him for this conduct (i.e., the completion of a mental health assessment and the 90 days of electronic monitoring). However, while the Ohio and the United States Constitutions prohibit successive criminal prosecutions for the same offense, the revocation of Johnson's parole in Ohio merely constituted an administrative proceeding that *Page 15 
reinstated his original sentence for which he was on parole. Poorman v.Ohio Adult Parole Authority (Mar. 6, 2002), 4th Dist. No. 01CA16, at *3, citing Blockburger v. United States (1932), 284 U.S. 299, 52 S.Ct. 180,76 L.Ed. 306; State v. Hollis (May 15, 1997), 8th Dist. No. 70781;Columbus v. Beuthin (1996), 108 Ohio App.3d 651, 654, 671 N.E.2d 587;State v. Zanders (Nov. 22, 1995), 9th Dist. No. 17147. In addition, not only is a parole revocation hearing not a proceeding which could result in a conviction, the revocation itself does not constitute punishment.Kirby v. Alexander (Mar. 16, 1992), 12th Dist. No. CA91-06-020, at *2, citing United States v. Miller (C.A.6, 1986), 797 F.2d 336, 340. Therefore, the prohibition on double jeopardy has no effect on his parole revocation. Id.
 {¶ 26} Moreover, we note that under the plain language of rule Ohio Adm. Code 5120: 1-1-21(A), the parole board was not required to give Johnson a mitigation hearing just based on his conviction of the attempted failure to comply offense since it did not amount to a "recommit[ment] to the department of rehabilitation and correction." We acknowledge that the parole board held its own hearing based on Johnson's alleged conduct, found that Johnson had violated the terms of his parole, and imposed its own conditions on Johnson (90 days of electronic monitoring). However, the parole board's conditions on Johnson's parole sanctions were dependent upon Johnson not being sentenced for the *Page 16 
"pending felony behavior." Johnson's sentence for the attempted failure to comply conviction was not reinstated until Johnson was found to have violated the terms of his community control and his community control was revoked. Thus, the trial court did not err in using Johnson's revocation of his community control on the attempted failure to comply conviction as the triggering event for Johnson's right to aKellogg mitigation hearing.
 {¶ 27} Since we have determined that the proper triggering incident for Johnson's Kellogg hearing was his community control revocation on the attempted failure to comply conviction, which occurred on November 3, 2006, we must next determine whether Johnson's hearing was unreasonably delayed.
 {¶ 28} According to the Sixth Circuit's opinion with respect to this mitigation hearing, Johnson "[was] entitled under the old regulations to a meaningful hearing as described in Morrissey v. Brewer (1972),408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484." Kellogg v. Shoemaker (1995),46 F.3d 503 (on remand to the district court prior to the consent decree). In Morrissey, the United States Supreme Court held that parolees are entitled to certain procedural due process rights in parole revocation hearings, one of which includes "the right to a hearing within a reasonable time." State ex rel. Jackson v. McFaul (1995),73 Ohio St.3d 185, 186, 652 N.E.2d 746, citing Morrissey, 408 U.S. 417. The Ohio Supreme Court has established a standard to determine whether a delay of a parole *Page 17 
revocation hearing entitles the alleged parole violator to habeas relief. First, the court must determine whether the delay was reasonable. "This involves the consideration and balancing of three factors: (1) the length of the delay, (2) the reasons for the delay, and (3) the alleged parole violator's assertion of his right to a hearing within a reasonable period of time." Seebeck v. Zent (1993),68 Ohio St.3d 109, 110, 623 N.E.2d 1195. Second, if there was an unreasonable delay, the court must next determine whether the delay prejudiced the alleged parole violator. Under this factor, the Court has identified three protected interests that are highlighted in this context: "(1) Prevention of oppressive prehearing incarceration, (2) minimizing of anxiety and concern of the alleged parole violator, and (3) limitation of the possibility that delay will impair the accused parole violator's defense at his final parole revocation hearing." Id. at 110-11.
 {¶ 29} Here, Johnson was recommitted to the department of rehabilitation and correction on November 3, 2006 for violating the terms of his community control. On November 28, 2006, Johnson was notified that he was entitled to a mitigation hearing, pursuant to theKellogg consent decree, to determine whether the revocation of his parole was appropriate. Additionally, on that same day a mitigation hearing before a hearing officer was held. Thus, there was a delay of 25 days from when Johnson was entitled to a mitigation hearing and when he received a mitigation hearing. Moreover, the parole board made its final *Page 18 
determination to revoke Johnson's parole on January 17, 2007. As to the second factor in the analysis, this Court cannot determine if there were any reasons for the delay, therefore this factor would weigh in favor of Johnson. However, there is also nothing in the record that evidences Johnson made any personal request for a mitigation hearing prior to his notification on November 28, 2006, thus the third factor would weigh in favor of respondent.
 {¶ 30} Overall, we do not believe that 25 days amounted to an unreasonable delay. The parole board acted swiftly in identifying Johnson as a member of the Kellogg class, it provided him with notification and a mitigation hearing before Johnson made any personal requests, and it made its final determination a little more than a month after the mitigation hearing. In addition, we note that while other jurisdictions have found certain delays to have been unreasonable, none of those cases involved a delay of less than one month. See Alford v.Tate, 7th Dist. No. 99-BA-22, at *2 (finding two years and nine months delay unreasonable); Taylor v. Ohio Adult Parole Authority (June 21, 2000), 7th Dist. No. 251, at *2 (finding four month delay not unreasonable); Jackson v. Ohio Adult Parole Authority, 4th Dist. No. 03CA12, 2003-Ohio-3996, ¶ 10 (finding delay of eleven months unreasonable); Richards v. Eberlin, 7th Dist. No. 04-BE-1,2004-Ohio-2636, ¶ 29 (finding over six months of delay was unreasonable). Therefore, because we find that there was no unreasonable delay, there is no need to discuss *Page 19 
whether Johnson was prejudiced. Thus, we find that the trial court did not error in finding that Johnson was not entitled to habeas relief.
 {¶ 31} Johnson's first and second assignments of error are, therefore, overruled.
 {¶ 32} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed
ROGERS and SHAW, J.J., concur.
[1] This was because the Ohio Adult Parole Authority took away the hearing officer's discretion in determining whether to revoke the parole. Under the new rules the officer was required to revoke the parole when a subsequent offense had been committed.
[2] In its opinion, the trial court thought it was either the parole violation for possession of a firearm or the community control violation for an unclean urine test that was the triggering event. *Page 1