[Cite as *State v. Harrah*, 2011-Ohio-4065.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

RYAN CRAIG HARRAH

    Appellant

C.A. No.    25449

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 08 12 3996

DECISION AND JOURNAL ENTRY

Dated: August 10, 2011

BELFANCE, Presiding Judge.

{¶1} Defendant-Appellant Ryan C. Harrah appeals from the judgment of the Summit County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

{¶2} Mr. Harrah pleaded guilty to burglary and menacing by stalking. The trial court sentenced him to a prison term of two years with two years suspended subject to his completion of a period of community control. According to the terms of his community control, he could not use substances of abuse or have contact with the victim, Robin Hutchinson, and was subject to regular urine testing.

{¶3} In April 2010, approximately 17 months after his sentencing hearing, Mr. Harrah entered VFW Post 1062 where he had, apparently, first met the victim while she was working as a bartender. Lisa Smith, a lady auxiliary present at that Post, testified that Mr. Harrah sat down at the bar, ordered a beer, and drank it. She also testified that she heard him ask about Ms.

Hutchinson, who was not working that night. Mr. Harrah completed a membership application and left.

{¶4} A few days later, Ms. Hutchinson contacted Probation Officer David Siko, Mr. Harrah's community control officer, and told him that Mr. Harrah had been at the VFW Post. Probation Officer Siko investigated the matter and initiated a violation of community control complaint against Mr. Harrah. The State alleged that Mr. Harrah had violated his community control by consuming alcohol, having contact with Ms. Hutchinson, and also by failing to submit a urine sample for testing in February 2009.

{¶5} The trial court held a hearing on the complaint and found that Mr. Harrah had violated the terms of his community control. It revoked Mr. Harrah's community control and reimposed his prison term.

II.

**ASSIGNMENT OF ERROR I**

"THE TRIAL COURT ERRED IN FINDING THAT HARRAH VIOLATED HIS COMMUNITY CONTROL BECAUSE THE STATE PRESENTED INSUFFICIENT EVIDENCE TO SUPPORT ITS CLAIM OF COMMUNITY CONTROL VIOLATIONS AND BECAUSE SUCH A FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶6} Mr. Harrah argues that the trial court erred when it found that he had violated conditions of his community control because its findings were not supported by sufficient evidence. Mr. Harrah, however, does not actually address the issue of sufficiency in his brief beyond quoting *State v. Newman* (July 10, 1991), 9th Dist. No. 14984. Because Mr. Harrah has not developed an argument concerning the sufficiency of the evidence, we do not address it. See App.R. 12(A)(2) and 16(A)(7).

**{¶7}** Mr. Harrah also argues that the trial court's finding that he violated his community control conditions was against the manifest weight of the evidence. Based upon existing precedent, this Court has applied a criminal manifest weight standard in the context of a manifest weight challenge to a community control violation. See *State v. Rose*, 9th Dist. No. 21750, 2004-Ohio-1614. At the time *Rose* was decided, however, this Court employed the criminal manifest weight standard in both criminal and civil proceedings. See, e.g., *State v. Millie*, 9th Dist. No. 03CA0125-M, 2004-Ohio-3707, at ¶6, citing *Tewarson v. Simon* (2001), 141 Ohio App.3d 103, 115. Subsequent to *Rose*, the Ohio Supreme Court reiterated the differences between the criminal and civil manifest weight standards. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶¶24-26. We have not had occasion to revisit our precedent since *Wilson*. As the parties have not put the issue squarely before us and our disposition in this case is unaltered when applying either standard, we decline to revisit our precedent at this time.

**{¶8}** The State alleged that Mr. Harrah violated his community control by consuming alcohol, failing to submit to a urine test, and having contact with Ms. Hutchinson. In order to demonstrate a community control violation, the State did not have to prove that each alleged violation occurred but, rather, that at least one of the alleged violations occurred. See *State v. Ricks*, 9th Dist. No. 09CA0094-M, 2010-Ohio-4659, at ¶¶6-9 (affirming the trial court's community control violation determination where there was evidence establishing one of two alleged community control violations).

**{¶9}** Mr. Harrah argues that the trial court's finding that he violated his community control was against the manifest weight of the evidence because his visit to the VFW Post did not qualify as a community control violation. However, he does not dispute the State's evidence concerning other community control violations, instead contending that indirect contact with the

victim does not justify the reimposition of his prison term. However, this argument addresses the propriety of the trial court's decision to revoke his community control and reimpose his prison sentence, not whether the trial court's determination that Mr. Harrah violated the terms of his community control was against the manifest weight of the evidence.

{¶10} Ms. Smith testified that Mr. Harrah came to the VFW Post, drank a beer, asked about Ms. Hutchinson, and filled out a membership application. Mr. Harrah admitted that he went to the VFW Post and that he submitted the application after learning that Ms. Hutchinson still worked there. Although Mr. Harrah stated that he drank ginger ale while at the VFW, he did admit that he consumed alcohol on a different occasion. Furthermore, in weighing the credibility of the witnesses, the trial court could have reasonably declined to believe Mr. Harrah's testimony that he only drank ginger ale, and could have reasonably determined that Ms. Smith's testimony was more credible.

{¶11} Probation Officer Siko also testified that Mr. Harrah missed a scheduled urine test, a fact that Mr. Harrah does not dispute. Furthermore, Mr. Harrah does not dispute that his imbibing alcohol or missing a urine test constitute violations of his community control.

{¶12} Upon thorough review of all of the evidence, we cannot say that the trial court's finding that Mr. Harrah violated one or more terms of his community control was against the manifest weight of the evidence.

{¶13} Mr. Harrah's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

"THE TRIAL COURT ABUSED ITS DISCRETION BY RE-IMPOSING THE BALANCE OF HARRAH'S SENTENCE."

{¶14} Mr. Harrah argues that the trial court abused its discretion when it reimposed his suspended prison term. The trial court's decision to reimpose a suspended sentence on a

community control violator is reviewed for an abuse of discretion. *State v. Walton*, 9th Dist. 09CA009588, 2009-Ohio-6703, at ¶13, citing *Rose* at ¶14. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Walton* at ¶13, citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶15} Mr. Harrah argues that the trial court should not have reimposed his sentence because he had obtained employment and housing, had started school, and had maintained sobriety "for a significant period of time." Additionally, he had not previously been found in violation of his community control conditions. According to Mr. Harrah, because "there was a way to monitor [him] in the community short of a prison sentence[,] [t]he trial court clearly abused its discretion in sentencing [him] to prison[.]"

{¶16} Mr. Harrah, however, admitted that he had been drinking only four days before the hearing, undermining his arguments about his sobriety. Further, while he had not been previously found to be in violation of his community control conditions, the trial court could weigh this factor in making its decision. Mr. Harrah has not provided this Court with legal authority suggesting that the trial court was prohibited from revoking his community control and reimposing his sentence because he had not had any previous community control violations.

{¶17} Before reimposing Mr. Harrah's prison term, the trial court explained its thought process to Mr. Harrah. It commented that, while missing the urine test and consuming alcohol did violate his community control conditions, they "certainly wouldn't be cause for me to send you to prison." It, however, noted that "[i]n dealing with someone who is on community control for a menacing by stalking charge, the red flags go up." It continued, remarking on its incredulity about Mr. Harrah's explanation about his presence at the VFW Post:

"You are telling me that you happened to be over there because of some property that you own, that you are going to own when you[r] uncle dies, you think might

die in four months, but you are not a doctor, but it is going to be yours. * * * [I]f you knew that she didn't work there, why were you asking? If you were asking just to be sure, why did you fill out the application? If you filled out the application, and then learned that she was still working there, why wouldn't you get rid of it, instead of saying to the people, as the letter indicates, don't tell her I was there?"

The trial court expressed its concern for the victim's safety and that it believed that Mr. Harrah knew that he should stay away from the victim, which included her place of employment. It summarized its thoughts saying, "I can't think of any legitimate reason for you to be [at the VFW Post] at all."

{¶18} This was not a case where Mr. Harrah happened to be out in public and accidentally ran into the victim or people who knew the victim. He did not walk into a random business where he could not have expected to encounter Ms. Hutchinson. Mr. Harrah went to the VFW Post knowing, at the very least, that she had worked there in the past and asked about her. Even presuming that he honestly believed that she no longer worked there, instead of quickly leaving once he realized she did, he submitted a membership application.

{¶19} The trial court did not revoke Mr. Harrah's community control lightly. It considered the evidence presented and weighed Mr. Harrah's explanation for his presence at the VFW Post. We cannot say that the trial court's decision to revoke Mr. Harrah's community control was arbitrary, capricious, or unconscionable. Accordingly, this Court cannot conclude that the trial court abused its discretion when it reimposed Mr. Harrah's prison term.

{¶20} His second assignment of error is overruled.

III.

{¶21} Mr. Harrah's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

MOORE, J.
CONCURS

CARR, J.
CONCURS IN JUDGMENT ONLY, SAYING:

{¶22} I concur in judgment only. Although Harrah couches his argument in terms of weight and sufficiency, he really argues that his conduct did not constitute indirect contact with the victim as a matter of law. Because he argues that his conduct did not legally give rise to a violation of the conditions of his community control so that there was no legal justification to reimpose his prison sentence, I would not address the weight or sufficiency of the evidence.

APPEARANCES:

CHRISTOPHER R. SNYDER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.