[Cite as *State v. Hand*, 2016-Ohio-582.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 15AP-916 |
| v. | : | (M.C. No. 2014 TRC 164178) |
| M. Thomas Hand, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellant. | : | |

_____

D E C I S I O N

Rendered on February 18, 2016

_____

*Richard C. Pfeiffer, Jr.*, City Attorney, *Lara N. Baker*, and *Melanie R. Tobias*, for appellee.

William H. Truax, for appellant.

_____

APPEAL from the Franklin County Municipal Court

BRUNNER, J.

{¶ 1} Defendant-appellant, M. Thomas Hand, appeals from a decision of the Franklin County Municipal Court, filed on September 16, 2015, finding probable cause supporting an alleged violation of his terms of misdemeanor probation and imposing modified conditions of community control. For the following reasons, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On June 27, 2013, a police officer stopped and cited Hand for driving left of center, failing to use a turn signal, and operating a vehicle while under the influence ("OVI"). The OVI charge was based on Hand's refusal to submit to a breath test and other signs pointing to potential alcohol intoxication, including the traffic violations themselves, indications on the horizontal gaze nystagmus test, and the detection by the arresting officer of the odor of alcohol on his person.

{¶ 3}   Following the trial court's determination of various motions not relevant to this appeal, Hand pled guilty on March 23, 2015 to an amended misdemeanor charge of "Having physical control of vehicle while under the influence." R.C. 4511.194.  The left of center and failure to use a turn signal traffic violations were dismissed.  The trial court ordered Hand to serve 180 days in jail but suspended 177 of the days conditioned upon successful completion of one year of community control and awarded 3 days of jail-time credit for completion of a "Driver Intervention Program" ("DIP").  The trial court also imposed a fine and costs, and ordered Hand to complete 80 hours of community service. In addition to the standard conditions of supervision, Hand's community control or probationary terms en toto were:

> Complete Community Service hours
>
> Attend DIP and complete any suggested follow up counseling
>
> No same or similar offense
>
> No new offenses of any kind
>
> Submit to alcohol/drug screen(s); no refusal of any tests

(Mar. 23, 2015 Sentencing Entry.)

{¶ 4}   On July 16, 2015, the probation department filed a statement of violations alleging as follows:

> On 6/3/15, Thomas Hand was instructed to submit a urinalysis. Without hesitation and without attempting, the defendant stated that he could not. After an hour, at approximately 11am, the defendant was sent to American Court Services (ACS). He remained there until 6:40 pm but did not submit a urinalysis. He attempted only 1 time within that 7 ½ hour period with ACS.

{¶ 5}   The trial court held a hearing on the matter on September 15 and 16, 2015. At the start of that hearing the trial court announced that, in the absence of a prosecutor, it would conduct direct examination.  On direct examination the probation officer testified that, on June 3, 2015, she asked Hand to submit to urinalysis.  She testified that she had no suspicion (for example, that Hand might have been impaired) to justify asking Hand to submit to testing; she simply did it because the court had ordered testing.  However, Hand said he was unable, at that time, to produce a urine sample for testing and did not, at least initially, appear to try.  She testified that Hand drank water and waited from 9:00

a.m. to after 6:40 p.m. without producing urine and admitted that if he were feigning illness or malingering, that would have been an unusual performance. She also admitted, that Hand explained to her that he suffers from congestive heart failure and kidney problems that make it difficult for him to urinate with regularity. Exhibits introduced in the trial court confirm that Hand suffers from congestive heart failure and kidney problems, that such conditions are known to cause urinary difficulties, and that Hand was, in fact, taking medications in an attempt to increase his urination rate.

{¶ 6} Hand also testified during the hearing. He explained that he had not refused to submit to a drug test, but simply found that he could not physically manage to pass urine on June 3, 2015. He recounted that he drank several glasses of water, waited from 9:00 a.m. until 6:40 p.m., and attempted to pass urine, even running water in the bathroom to try to mentally stimulate urination.

{¶ 7} On September 16, 2015, the trial court orally announced its decision and memorialized the decision by a written entry. It found a violation of Hand's probation, ordered strict compliance with conditions already set, authorized the probation department to take breath, urine, blood, or hair for testing purposes, and ordered Hand to submit to installing an ignition interlock device on his vehicle.

{¶ 8} Hand now appeals.

## II. ASSIGNMENT OF ERROR

{¶ 9} Hand presents a single assignment of error for review:

> THE TRIAL COURT'S VERDICT OF GUILTY TO THE PROBATION VIOLATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE SAME.

## III. DISCUSSION

{¶ 10} This court has previously explained the following:

> The privilege of probation rests upon the probationer's compliance with the conditions of probation and any violation of those conditions may properly be utilized to revoke the privilege. In a probation violation proceeding, the state need not prove the violation beyond a reasonable doubt. Rather, substantial evidence that a probationer willfully violated the terms of his or her probation is sufficient to support the revocation of probation. The decision whether to revoke

No. 15AP-916

> probation rests within the sound discretion of the trial court. An "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is arbitrary, unreasonable or unconscionable.

(Citations omitted.) *State v. Mason*, 10th Dist. No. 01AP-847, 2002-Ohio-2803, ¶ 20, citing *State v. Bell*, 66 Ohio App.3d 52, 57 (5th Dist.1990); *State v. McKnight*, 10 Ohio App.3d 312, 313 (12th Dist.1983); *State v. Adams*, 62 Ohio St.2d 151, 157 (1980); *State v. Mingua*, 42 Ohio App.2d 35, 40 (10th Dist.1974). In relevant part, Hand's probation order required him to "[s]ubmit to alcohol/drug screen(s); no refusal of any tests." Thus, in this case the question is whether the evidence was sufficient and weighty enough to justify finding that Hand's failure to produce a urine specimen when the court attempted to test him was a refusal such that the trial court properly exercised its discretion in finding there was substantial evidence to find he had violated the terms and conditions of his community control sentence or probation.

{¶ 11} The Supreme Court of Ohio has defined "willfully" as a descriptor which "implies an act done intentionally, designedly, knowingly, or purposely, without justifiable excuse." *State v. Earlenbaugh*, 18 Ohio St.3d 19, 21 (1985), citing *Black's Law Dictionary*, 1434 (5th Ed.1979); *see also Steward v. Columbus*, 10th Dist. No. 97APG12-1567 (Sept. 10, 1998). With due deference to the discretion exercised by the trial court, we find the evidence before it was against the conclusion reached on whether Hand "intentionally, designedly, knowingly, or purposely" refused to urinate "without justifiable excuse." *Id.*

{¶ 12} Even on direct examination by the trial court, the probation officer testified as follows:

> Q: [O]n June 3rd, did you order Mr. Hand to submit to urinalysis?
>
> A: Yes.
>
> Q: What happened?
>
> A: He told me he was unable to
>
> * * *

No. 15AP-916

> So he immediately said he couldn't go. He did not try. He was given a cup to drink water and help him along the way. After an hour, I sent him to American Court Services for urinalysis there, at which time he was - - he did not.

(Tr. 11-12.)

{¶ 13} On cross-examination, the probation officer testified in more detail about the nature of Hand's difficulties:

> Q: Okay. Now, did Mr. Hand, on June 3rd, tell you that he suffers from medical conditions that made it difficult or hard for him to provide a urine sample?
>
> A: He did.
>
> Q: Did he tell you of his congestive heart failure?
>
> A: He did.
>
> Q: Okay. Did he tell you that that caused him to have kidney problems as well?
>
> A: He did.
>
> Q: Okay. And in light of that, you still requested - - insisted that he provide a urine sample, correct?
>
> A: Yes.

(Tr. 15.)

{¶ 14} On the topic of whether Hand was refusing or malingering, the probation officer testified under cross-examination as follows:

> Q: Did [Hand] verbally - - Did he in any way indicate to you, verbally or otherwise, that he was refusing to provide you with a sample of urine on June 3rd?
>
> A: No.
>
> Q: Okay. And, in fact, he did submit to alcohol/drug testing in the sense that he tried.
>
> A: He - - I don't believe that he did.

No. 15AP-916

Q: Okay. Would you agree that it would be unusual for a person who is merely malingering to hold his urine for a period from 9:00 in the morning until 6:10[1] [sic] at night?

A: It's unusual, yes.

(Tr. 18.)  Moreover, exhibits introduced at the trial court confirm that Hand suffered from congestive heart failure, that such a condition is known to cause urinary difficulties, and that Hand was, in fact, taking medications in an attempt to increase his ability to pass urine.

{¶ 15} Hand also testified on direct examination by his attorney during the hearing and confirmed that he did not refuse to submit to testing but rather found he could not physically produce a sample.

Q: Once you arrived, did [the probation officer] ask you to submit to a urinalysis test?

A: Yes.

Q: Okay. Did you know in advance that she was going to be making that request of you prior to that date?

A: No.

Q: You've heard her testimony about what transpired. Do you - - Did you sit out in the hallway and try to drink enough water to provide a sample?

A: Yes.

Q: After a couple of hours, that didn't work, correct?

A: Correct.

Q: Did she then send you over to American Court Services?

A: Yes, she did.

Q: What time did you arrive there?

---

[1] The transcript elsewhere reflects that 6:40 p.m. was the time Hand departed ACS.

No. 15AP-916

A: Approximately 11:00.

Q: What time did you leave there?

A: 6:40 at night.

Q: What did you do while you were there?

A: I sat by the front desk the entire time. They told me I couldn't have any more water.

Q: Did you drink any water while you were there?

A: They allowed me three cups of water prior to me attempting, because I had no urge or whatever; so they allowed me three cups.

Q: Sorry - -

A: They allowed me three cups of water prior to me attempting to go to the restroom.

Q: Yes. Did they ask you to stop drinking water?

A: Yes.

Q: Okay. Did you have the urge to urinate while you were there?

A: No, I did not.

Q: Did you attempt at the end to try to nevertheless give a sample?

A: Yes, I did. The nice gentleman even turned on the water in the bathroom to try to make the conditions right so I could go, and I still couldn't go.

Q: Did you intentionally or purposely withhold providing a sample that day?

A: No, I did not.

(Tr. 30-32.)

{¶ 16} In addition, this case presents a somewhat unusual circumstance:

No. 15AP-916

> The Court: I find myself in the unusual position of not having a prosecutor here to do direct examination of the witness. As a result, my intent - - Based on the fact that this is an allegation of a violation of probation as ordered by this Court, my intent is to perform the direct examination myself. I find this unusual, but I'm not sure that I see any other way to get the testimony out in court.
>
> [Defense]: I don't disagree with you, and I know that as a former prosecutor you have quite - - experience in getting - - using direct examination.
>
> The Court: I hope I can remember how to do it. It does put you in the awkward position of objecting to any question that I might offer. If you have an objection to the form of a question, please feel free to make it. I will rule on it, and I - - Although the rules of evidence don't apply strictly to this hearing, I'm certainly willing to entertain any concerns you might have to make sure that we make this as clear a record as possible.

(Tr. 5-6.) Neither side has raised this issue on appeal and defense counsel did not object to the procedure at the trial level. Moreover, we recognize that probation violation hearings are less formal than other case proceedings, that the same strictures on evidence are not rigorously enforced, and that a trial court, having retained jurisdiction over the probationer, has the power to inquire and act upon its own motion and discretion. R.C. 2929.25(B); *State v. Theisen*, 167 Ohio St. 119 (1957), syllabus (decided based on former R.C. 2951.09). Nevertheless, judicial partiality is "a paradigmatic example of structural constitutional error," and even its appearance is to be avoided. *State v. Sanders*, 92 Ohio St.3d 245, 278 (2001), citing *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991); Ohio Jud.Cond.R 1.2. While it was not inappropriate for the trial court to have acted as both prosecutor and judge in this probation violation hearing (because of the nature of the hearing), we explicitly do not favor the evidence the trial judge elicited over evidence presented by parties in according the trial court deference. However, there is an element of discomfort in that the evidence elicited for the trial court's review and determination on judgment was in part that produced by the trial court, itself, on behalf of the State.

{¶ 17} However, based on our review of the record elicited by the trial court and defense counsel, we find nothing to support the allegation that Hand refused to submit to

No. 15AP-916

a urinalysis test. The testimony from witnesses and the contents of the exhibits show that Hand has medical conditions that make it difficult for him to urinate and that he sat in full view of probation officers or testing personnel for nearly ten hours without urinating (despite drinking water and even making an attempt with running water to stimulate an urge to produce a specimen for testing). Other than the bare fact that Hand did not urinate upon command, there is nothing in the record to support the trial court's conclusion that Hand willfully refused the test and therefore, implicitly, was malingering regarding his inability to urinate.

{¶ 18} The State's brief cites a line of cases for the proposition that a probation violation need not be willful for a court to take action: *Bearden v. Georgia.*, 461 U.S. 660 (1983); *State v. Qualls*, 50 Ohio App.3d 56 (10th Dist.1988); *State v. Harian*, 8th Dist. No. 97269, 2012-Ohio-2492; *State v. Norris*, 5th Dist. No. 2010CA0070, 2010-Ohio-6007; *State v. Conn*, 11th Dist. No. 2010-P-0067, 2011-Ohio-5865. However, each of the cases cited by the State (as the State's brief quite properly and candidly admits) provides that relaxation of the willfulness element is appropriate where allowing the probationer to continue under the same terms of probation would pose a threat to the public. For example, in *Bearden*, the United States Supreme Court reversed a decision that revoked the probation of a man with a ninth grade education because he could not find a job. In so doing the Supreme Court remarked as follows:

> We do not suggest that, in other contexts, the probationer's lack of fault in violating a term of probation would necessarily prevent a court from revoking probation. For instance, it may indeed be reckless for a court to permit a person convicted of driving while intoxicated to remain on probation once it becomes evident that efforts at controlling his chronic drunken driving have failed. *Cf. Powell v. Texas*, 392 U.S. 514 (1968); *Robinson v. California*, 370 U.S. 660 (1962).* * * In contrast to a condition like chronic drunken driving, however, the condition at issue here -- indigency -- is itself no threat to the safety or welfare of society.

*Id.* at 668, fn. 9. *See also Qualls* at 59-60 (affirming revocation of probation where violations may not have been willful but ongoing behavioral effects of untreated mental illness made the probationer a danger to the community); *Harian* at ¶ 30 (affirming revocation for failure to qualify for court-mandated treatment program based on a mental

illness that made the probationer a danger to society); *Norris* at ¶ 22 (finding revocation proper although the probationer may not have willfully violated his probation where mental health evaluation showed that the probationer was a danger to society because of an out of control antisocial personality disorder); *Conn* at ¶ 21 (placing a sex-offending probationer in prison where there was no place where she could reside while on probation where she would not be exposed to children).

{¶ 19} We recognize that the *Conn* decision contains language to the effect that there is generally "no requirement that the state prove willfulness before the court can revoke a defendant's community control." *Conn* at ¶ 18. However, we have not interpreted or applied that statement inversely, that is, that community control must be revoked for a violation, whether or not it was proved to be willful. We have previously stated that, to be sufficient, evidence of a violation of probation must support a finding that it was willful, unless there is, as discussed in *Bearden*, *Qualls*, *Harian*, *Norris*, and *Conn*, an ongoing threat to public safety or welfare that justifies revocation. *See, e.g.*, *Mason* at ¶ 20; *State v. Thomas*, 10th Dist. No. 13AP-985, 2014-Ohio-2912, ¶ 10. Some courts have recognized that " '[i]t is a violation of the Equal Protection Clause of the U.S. Constitution to revoke a defendant's probation simply because she is too poor to pay restitution where the record contains no evidence that the failure to pay, was willful or intentional or that failure to obtain employment, in order to pay was willful or intentional.' " *State v. Burgette*, 4th Dist. No. 13CA50, 2014-Ohio-3483, ¶ 12, quoting *State v. Wolfson*, 4th Dist. No. 03CA25, 2004-Ohio-2750, ¶ 20.

{¶ 20} Here, Hand's DIP evaluation in his original sentence resulted in a report to the trial court that Hand had "[s]light or no problem," and no recommendation for further evaluation or treatment. It appears from the record that the trial court's own evaluation at sentencing was consistent, because it did not order Hand to abstain from alcohol consumption during probation (trial court remarking that "as of now I'm not going to order no consumption"). (Tr. 36.)

{¶ 21} Moreover, a violation of Hand's probation, by the express terms of the trial court's entry, occurs upon "refusal" of a test. An element of the will is implicit in the concept of "refusal." Black's Law Dictionary, for example, defines "refusal" in relevant part as, "[t]he denial or rejection of something offered or demanded (the lawyer's refusal

No. 15AP-916

to answer questions was based on the attorney-client privilege)." *Black's Law Dictionary* 1472 (10th Ed.2014). As a related example, the Oxford English Dictionary defines "refuse" in verb form as "[t]o decline to do something; to express or *show determination not to do something*." (Emphasis added.) *Oxford English Dictionary* (3d Ed.2009). Thus, even were willfulness not a separate requirement for finding a probation violation, implicit in the concept of "refusal" is the notion that will is inherent in its exercise. Refusal does not inhere in an honest statement, "I cannot." It is rather found in the statement, "I will not." The evidence at the hearing before the trial court was all to the effect that Hand could not urinate, not that he would not urinate.

{¶ 22} Because the record is devoid of any indication that Hand willfully refused to comply with the testing requirements of his probation, we find that the trial court abused its discretion in finding that Hand's inability to produce a urine sample for sobriety testing was willful. We further find that, since the trial court explicitly determined in its original sentence that it would not order "no consumption" and because the trial court made no further finding at the revocation hearing that Hand's use of alcohol would continue to pose a threat to the safety or welfare of society, the trial court abused its discretion in finding a violation based on "refusal of a[] test[]." (Mar. 23, 2015 Sentencing Entry.) We therefore sustain Hand's assignment of error.

## IV. CONCLUSION

{¶ 23} Because the record does not supply evidence that Hand willfully refused to submit to alcohol and drug testing and because there is no other evidence in the record to support a conclusion that Hand's consumption of alcohol poses a danger to society, we reverse the Franklin County Municipal Court's finding of a violation of Hand's terms and conditions of community control or probation.

*Judgment reversed;*
*cause remanded.*

KLATT and HORTON, JJ., concur.

—————————