[Cite as *State v. Conte*, 2018-Ohio-4688.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

RONALD D. CONTE

    Appellant

C.A. No.     28868

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR-2014-07-1903

DECISION AND JOURNAL ENTRY

Dated: November 21, 2018

---

TEODOSIO, Judge.

{¶1} Appellant, Ronald D. Conte, appeals from the judgment of the Summit County Court of Common Pleas revoking his community control and reimposing his suspended prison sentence. This Court reverses and remands.

I.

{¶2} Mr. Conte was convicted of multiple felonies resulting from the theft $558,100.02 from various clients of his accounting business. He was sentenced to 59 months in prison, but was granted judicial release and placed on community control after serving 21 months of his sentence. One of the conditions of his community control was the payment of restitution to the victims in an amount of $2,500.00 per month. Upon Mr. Conte's motion, the trial court judge reduced the amount to $1,500.00 per month. Mr. Conte made partial restitution payments each month, but he did not fully comply with his monthly restitution obligations and was consequently served with two separate community control violations. Following a community

control violation hearing, the trial court found Mr. Conte guilty of violating the terms and conditions of his community control, revoked his community control, and reimposed his suspended prison sentence.

{¶3} Mr. Conte now appeals and raises two assignments of error for this Court's review.

{¶4} For ease of analysis, we will consolidate Mr. Conte's assignments of error.

II.

### ASSIGNMENT OF ERROR ONE

SUBSEQUENT TO REVOCATION OF COMMUNITY CONTROL, THE TRIAL COURT'S REIMPOSITION OF APPELLANT'S SUSPENDED PRISON SENTENCE VIOLATED HIS CONSTITUTIONAL RIGHTS UNDER THE FEDERAL AND STATE CONSTITUTIONS.

### ASSIGNMENT OF ERROR TWO

WITHOUT SUBSTANTIAL EVIDENCE OF WILLFULLNESS (SIC) BY APPELLANT IN UNDERPAYING HIS RESTITUTION, REVOKING HIS COMMUNITY CONTROL AND SENDING HIM BACK TO PRISON WAS AN ABUSE OF DISCRETION.

{¶5} In his assignments of error, Mr. Conte argues that the trial court erred in revoking his community control and in reimposing his suspended prison sentence because he was making partial restitution payments and there was no evidence that he willfully failed to pay the full amount each month. We reverse and remand the matter back to the trial court so that it may hold a new hearing, conduct the appropriate analysis, and make the requisite findings.

{¶6} We review a trial court's decision to reimpose an offender's suspended sentence following a community control violation for an abuse of discretion. *State v. Harrah*, 9th Dist. Summit No. 25449, 2011-Ohio-4065, ¶ 14. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or

unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶7} "When an offender violates the terms of his or her community control sanction, a trial court 'may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender * * *.'" *State v. Estright*, 9th Dist. Summit No. 27598, 2016-Ohio-1194, ¶ 7, quoting R.C. 2929.19(B)(4). However, if the violation stems solely from the failure to pay restitution,

> a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke [community control] and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay.

{¶8} *Id.*, quoting *Bearden v. Georgia*, 461 U.S. 660, 672 (1983). "[A] trial court cannot deprive a probationer of 'conditional freedom' when 'through no fault of his own, he cannot pay [a] fine.'" *Id.*, quoting *State v. Sheesley*, 9th Dist. Summit No. 27585, 2015-Ohio-4565, ¶ 5, quoting *Bearden* at 672. "The Supreme Court of Ohio has defined 'willfully' as a descriptor which 'implies an act done intentionally, designedly, knowingly, or purposely, without justifiable excuse.'" *State v. Hand*, 10th Dist. Franklin No. 15AP-916, 2016-Ohio-582, ¶ 11, quoting *State v. Earlenbaugh*, 18 Ohio St.3d 19, 21 (1985), citing Black's Law Dictionary, 1434 (5th Ed.1979).

{¶9} The evidence presented at Mr. Conte's community control violation hearing established that he repeatedly failed to meet his full, monthly restitution obligation, but was

instead only making partial payments. The court heard testimony from two probation officers who acknowledged the partial payments and testified that they were unaware of any evidence that Mr. Conte's noncompliance with the court's restitution order was willful. Intensive probation supervisor Lisa Davis testified that when she discussed restitution payments with Mr. Conte, he explained that he "wasn't able to pay the full amounts" because "the amounts were too much and [] he didn't agree to that full amount, [but] his attorney made that amount up for him." Mr. Conte filed a motion in April, which was granted by the trial court, and his monthly restitution obligation was reduced from $2,500.00 per month to $1,500.00 per month. Mr. Conte's second probation officer, Lorri Dunn, testified that he continued making partial payments, including a nominal $25.00 payment in September despite the fact that he had become unemployed, but she stated that Mr. Conte never actually provided her with any letter of termination from his employer. Nonetheless, both probation officers recommended that Mr. Conte be continued on community control.

{¶10} The State offered Mr. Conte's own subpoenaed accounting records into evidence at the hearing to show that he was willfully noncompliant and should have been making higher restitution payments. The State argued that Mr. Conte was paying more than the minimum monthly amount required on his personal credit cards and was purchasing various personal items instead of paying more restitution. The documents showed, for example, that Mr. Conte made a $136.10 payment in June on his Capital One credit card in which the minimum monthly payment was purportedly only $33.00. Even after the court significantly reduced his monthly restitution obligation in April, Mr. Conte made various purchases of over $100.00 and $200.00, including a purchase from "Facebook CA" for $250.09. He also made a $50.00 purchase from Copper Chef and a $20.00 purchase from Dream Products. Mr. Conte's records included some receipts to

show that he paid cash for some medications at Walmart and bought $156.92 worth of clothes at DXL Men's Apparel.

{¶11} Mr. Conte testified at the hearing as to his monthly income and expenses as well as the recent loss of his job. He testified that he paid restitution to the best of his ability and paid everything that he could. After the prosecutor cross-examined Mr. Conte, the trial court questioned him further regarding his accounting records, specifically as to why certain expenses inexplicably increased in recent months. Moreover, when he was initially obligated to pay $2,500.00 per month in restitution, Mr. Conte had listed $1,377.00 as social security income and $2,500.00 to $3,000.00 as monthly rental income. The court noted that those incomes were no longer included once Mr. Conte's monthly restitution obligation was reduced in April. The court indicated concern that the substantial rental income from a building owned by Mr. Conte and his wife was now only being attributed to his wife. The court stated:

> It's called marital assets. And if you want to take advantage of owning the building and having income coming in and you don't want to include – – how do I know every month that he's responsible only for the grocery bills? How convenient that every time his income goes up his expenses go up. Then when his income goes down his expenses go down. So obviously there's a sharing of marital assets, and by the way it's not willingness or willfulness not to pay, it's ability to pay. And I'm allowed to consider every dime that comes through that house. So my question, because you think you're smarter than everybody else * * * And by the way, you're an admitted thief * * * You do this for a living. You do these spreadsheets for a living. I'm smart enough to look through it and figure it out. You and your wife own the building that Akron Income Tax is located in and they pay rent every month.

The court surmised: "[A]t some point in time through his crafty accounting he decided what he was going to account for as his responsibility and what he was going to account for as his wife's responsibility." The court continued:

> Mr. Conte does what Mr. Conte wants to do when Mr. Conte wants to do it. And Mr. Conte controls the situation, Mr. Conte controls the numbers * * * I have no evidence other than his word, which I discount, that he is no longer employed. He

could be working for Akron Income Tax and being paid under the table. I don't know. But I know this much: He's got the ability to pay. He chose to navigate the numbers so that it looks like he can't pay, and I'm done dealing with Mr. Conte's total disregard for this Court's previous rulings and my previous consideration.

The court ultimately found that Mr. Conte had the ability to pay restitution, found him in violation of the terms and conditions of his community control, revoked his community control, and reimposed his suspended prison sentence.

{¶12} Before reimposing Mr. Conte's suspended prison sentence, the trial court was required to not only inquire into the reasons for his failure to make full restitution payments, but also find that he had "'willfully refused to pay or [had] failed to make sufficient bona fide efforts legally to acquire the resources to pay'" restitution. *Estright* at ¶ 11, quoting *Bearden* at 672. However, the court made no such findings explicitly on the record and, instead, apparently rejected the *Bearden* standard by stating: "[A]nd by the way it's not willingness or willfulness not to pay, it's ability to pay."

{¶13} The dissent respectfully proposes an interpretation of the United States Supreme Court's clear classification of probationers who have "willfully refused to pay" to include all non-paying probationers who have the ability to pay, regardless of willfulness. While we can appreciate the dissent's theory of interpretation, we must nonetheless presume that the Supreme Court meant what it said when it explicitly required trial courts to determine if probationers "willfully" refused to pay, and we cautiously refrain from interpreting the high court's use of the term "willfully" as mere surplusage. *See Bearden* at 672. Had the high court not intended for trial courts to determine the willfulness of a probationer's actions, we surmise that it would have worded its holding in *Bearden* differently and refrained from repeated use of the word "willfully." The Court could have simply held that trial courts are permitted to revoke probation

and incarcerate any probationers who have the ability to pay restitution, but fail to pay. The Court did not do so and, instead, determined that the failure to pay had to be willful, highlighting in its analysis the fact that the *reasons* for non-payment are of "critical importance" here. *Id.* at 668. In applying the holding in *Bearden* as it is written, without the benefit of any additional clarification from the Supreme Court, we cannot presume to either ignore the Court's use of the term "willfully" or excise it completely from the Court's holding.

{¶14} The trial court here did inquire as to Mr. Conte's finances and noted what it labeled as a "convenient" fluctuation in Mr. Conte's personal accounting of his income and expenses from month to month, specifically his failure to include substantial income amounts once his monthly restitution obligation was reduced by the court. It further stated that Mr. Conte shared marital assets with his wife, disregarded the court's rulings, and "chose to navigate the numbers so that it looks like he can't pay[,]" strongly implying that Mr. Conte used his skill set and background to engage in deceptive accounting practices while preparing his personal accounting records in an effort to avoid making full restitution payments.

{¶15} Nevertheless, because the record does not reflect that the trial court made the requisite finding of willfulness pursuant to *Bearden*, and in light of the trial court's incorrect assertion that "it's not willingness or willfulness not to pay, it's ability to pay[,]" we are constrained to remand this matter back to the trial court so that it may hold a new evidentiary hearing in accordance with *Bearden*. *See Estright* at ¶ 13. At that hearing, the court may order Mr. Conte to serve the remainder of his prison term only if it determines that he failed to pay restitution and either (1) he did so willfully or intentionally by not making a bona fide effort, or (2) despite his bona fide efforts, an alternative means of punishment would not be adequate to meet the State's interests in punishment and deterrence. *See id.*; *Bearden* at 672.

**{¶16}** Accordingly, Mr. Conte's first and second assignments of error are sustained.

III.

**{¶17}** Mr. Conte's assignments of error are sustained. The judgment of the Summit County Court of Common Pleas is reversed and the cause is remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
CONCURS.

HENSAL, J.
DISSENTING.

{¶18} I do not agree that the trial court failed to make the findings required to revoke Mr. Conte's probation. In *Bearden*, the United States Supreme Court examined "whether the Fourteenth Amendment prohibits a State from revoking an indigent defendant's probation for failure to pay * * * restitution." *Bearden v. Georgia*, 461 U.S. 660, 661 (1983). It determined that the answer depended on the reason that the defendant failed to pay, explaining that there is a difference between a defendant who "willfully refused to pay the fine or restitution when he has the means to pay," one who "fail[ed] to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution[,]" and one who "made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own[.]" *Id*. at 668. It concluded that a court could revoke the probation of a defendant who fell into the first two categories, and sentence him to prison. *Id*. at 672. It concluded that a court could only revoke probation and imprison a Defendant that fell into the third category, however, "if alternative measures are not adequate to meet the State's interests in punishment and deterrence[.]" *Id*.

{¶19} Although the United States Supreme Court used the word "willfully" in describing the first category of defendants, that term must be interpreted in context with the rest of the Court's discussion in *Bearden*, not by applying a definition used by the Ohio Supreme Court in interpreting Ohio law. The issue in *Bearden* was "whether a sentencing court can revoke a defendant's probation for failure to pay the imposed fine and restitution, absent evidence and findings that the defendant was somehow responsible for the failure or that alternative forms of punishment were inadequate." *Id*. at 665. The United States Supreme Court

discussed two of its prior decisions and noted that they stood for the proposition that, "if the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." *Id*. at 667-668. It distinguished such situations, however, from "the situation where a defendant was at fault in failing to pay the fine." *Id*. at 668.

{¶20} In *Bearden*, the United States Supreme Court explained that, if a defendant "has the means to pay" but "willfully refused to pay[,]" "the State is perfectly justified in using imprisonment as a sanction to enforce collection." *Id*. It also explained that, if the defendant failed "to make sufficient bona fide efforts to seek employment or borrow money in order to pay" it "may reflect an insufficient concern for paying the debt he owes to society for his crime." *Id*. "In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense." *Id*. The Court, however, explained that it would be "fundamentally unfair to revoke probation automatically" if the defendant "has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own[.]" *Id*. at 668. Under such situations, the defendant's "lack of fault provides a 'substantial reason which justifies or mitigates the violation and makes revocation inappropriate.'" (Alterations sic.) *Id*. at 669, quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973).

{¶21} Under *Bearden*, the only defendants who may avoid the revocation of probation for failure to pay restitution are those who "could not pay despite sufficient bona fide efforts to acquire the resources to do so[.]" *Id*. at 672. Even they may be imprisoned "if alternative measures are not adequate to meet the State's interests in punishment and deterrence * * *." *Id*. In this case, however, the trial court explicitly found that Mr. Conte had the ability to pay his restitution amount. Thus, he is not someone who "could not pay despite sufficient bona fide

efforts[.]" *Id*. The trial court, therefore, did not violate Mr. Conte's constitutional rights or abuse its discretion when it revoked his community control. Accordingly, because I would affirm the judgment of the trial court, I respectfully dissent.

APPEARANCES:

BRIAN J. WILLIAMS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.