[Cite as *State v. Thompson*, 2021-Ohio-4491.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 20AP-352 |
| | | (C.P.C. No. 09CR-1170) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| David A. Thompson, | : | |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on December 21, 2021

---

**On brief**: [*Janet Grubb*, First Prosecuting Attorney], and *Kimberly M. Bond*, for appellee. **Argued**: *Kimberly M. Bond*.

**On brief**: *Yeura Venters*, Public Defender, and *Ian J. Jones*, for appellant. **Argued**: *Ian J. Jones*.

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Defendant-appellant, David A. Thompson, appeals from a judgment of the Franklin County Court of Common Pleas reimposing a prison sentence following revocation of judicial release and resentencing him. For the reasons which follow, we affirm in part and reverse in part.

{¶ 2} By indictment filed February 27, 2009, plaintiff-appellee, State of Ohio, charged appellant with 23 felony counts, including charges of engaging in a pattern of corrupt activity, tampering with records, money laundering, forgery, and filing incomplete, false, and fraudulent tax returns. The charges arose from appellant's actions during his tenure as pastor of the World of Pentecost Church (the "church") from 1995 to 2007.

Following a bench trial, the court acquitted appellant of one count of engaging in a pattern of corrupt activity, and found appellant guilty of the lesser-included offense of second-degree felony theft on a count charging first-degree felony theft. The court found appellant guilty of the remaining counts charged in the indictment.

{¶ 3} On December 8, 2010, the court issued its judgment entry imposing sentence. The court sentenced appellant to "a period of Community Control for Five (5) YEARS" on Counts 1 and 3 of the indictment, and notified appellant that he would "serve a prison sentence of Six (6) Years" if he violated his community control. (Dec. 8, 2010 Sentencing Entry at 2-3.) The court sentenced appellant to a 5-year term of imprisonment on Counts 4 through 16, and a 12-month term of imprisonment on Counts 17 through 23. The court ordered Counts 1 and 3 to run concurrent to each other and Counts 4 through 23 to run concurrent to each other but ordered Counts 1 and 3 to be served consecutive to Counts 4 through 23. The court ordered appellant to pay restitution to the church in the amount of $733,048.86.

{¶ 4} Appellant appealed his conviction and sentence. In *State v. Thompson*, 10th Dist. No. 10AP-1004, 2011-Ohio-5169 ("*Thompson I*"), this court affirmed the judgment of conviction but reversed and remanded for the trial court to reduce the amount of restitution. Appellant did not raise any issue concerning his sentence to a consecutive term of community control in *Thompson I.*

{¶ 5} On November 12, 2014, after serving nearly 4 years of his 5-year prison sentence, appellant filed a R.C. 2929.20 motion for judicial release. At a January 16, 2015 hearing on the motion, the court stated it would grant the motion for judicial release and suspend the "six-year prison sentence" on Counts 1 and 3 as well as the prison sentence on Counts 4 through 23. (Jan. 16, 2015 Tr. at 10.) The court further stated that, as it had originally sentenced appellant to "a split sentence," the "community control portion of that sentence [as to Counts 1 and 3 would] begin as well as well as [sic] community control for the judicial release time." (Jan. 16, 2015 Tr. at 11.) On January 20, 2015, the court issued an entry granting appellant's motion for judicial release. The entry stated that the "remainder of the Eleven (11) Years (Five years Prison and Six years suspended for Community Control)" was "suspended and Defendant [was] placed on Community Control for a period of Five (5) years under Intensive Supervision." (Jan. 20, 2015 Entry Granting

Mot. for Judicial Release at 1-2.) The court imposed community control sanctions and ordered appellant to pay his court costs and restitution to the church in the amount of $625,727.86.

{¶ 6} On March 13, 2019, appellant's probation officer filed a statement of violations with the court alleging that appellant violated his community control by failing to make appropriate payments toward restitution. The statement indicated that the balance remaining on appellant's restitution was $621,377.50.

{¶ 7} The trial court held a community control revocation hearing on April 26, 2019. Appellant stipulated to the community control violation. The court stated that it believed appellant had been "underemployed" while on community control and had "not made the effort." (Apr. 26, 2019 Hearing Tr. at 14.) The court specifically noted that, despite his minimal payments toward restitution, appellant "found money" to take several trips, including a trip "to Tennessee to get married and go to Myrtle Beach for [his] honeymoon." (Apr. 26, 2019 Hearing Tr. at 13-14.) Appellant's counsel argued at the hearing that appellant's sentence to a consecutive term of community control following a prison term was "contrary to law." (Apr. 26, 2019 Hearing Tr. at 7.)

{¶ 8} On May 2, 2019, the trial court issued an entry finding appellant "to be in violation" of his community control, but concluding that appellant's community control "need not be revoked at this time." (May 2, 2019 Entry.) The trial court restored appellant to community control with the same sanctions and conditions imposed on January 16, 2015. (May 2, 2019 Entry.)

{¶ 9} Appellant appealed from the May 2, 2019 entry to this court. In *State v. Thompson*, 10th Dist. No. 19AP-359, 2020-Ohio-6756 ("*Thompson II*"), decided December 17, 2020, we resolved appellant's appeal and affirmed the May 2, 2019 entry. Appellant argued in the appeal that the trial court had erroneously sentenced him to a period of community control on Counts 1 and 3 to be served consecutive to his prison sentence on the other counts, in violation of *State v. Hitchcock*, 157 Ohio St.3d 215, 2019-Ohio-3246.[1] Appellant alleged that the *Hitchcock* error rendered his sentence void. However, as the trial court possessed subject-matter jurisdiction over appellant's case and

---

[1] *Hitchcock* holds that "unless otherwise authorized by statute, a trial court may not impose community-control sanctions on one felony count to be served consecutively to a prison term imposed on another felony count." *Id.* at ¶ 1.

personal jurisdiction over appellant, we concluded that any error in appellant's sentence rendered the sentence voidable, not void. *Thompson II* at ¶ 11-12. *See State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, ¶ 42; *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, ¶ 1. As appellant could have, but did not, raise an argument regarding his sentence to a consecutive term of community control in his direct appeal, res judicata barred appellant's claims in *Thompson II*. *Id.* at ¶ 13.

{¶ 10} On October 23, 2019, while *Thompson II* was pending, appellant filed a motion in the trial court asserting that his sentence to a consecutive term of community control on Counts 1 and 3 was void pursuant to *Hitchcock*. Appellant asked the trial court to void the consecutive term of community control from his sentence and terminate his community control.

{¶ 11} On November 8, 2019, appellant's probation officer filed a statement of violations with the court, alleging that appellant violated his community control by failing to make adequate payments toward restitution. The balance remaining on appellant's restitution as of November 8, 2019 was $620,175.

{¶ 12} The trial court held a community control revocation hearing on December 20, 2019. The court indicated at the hearing there were "a couple of issues" before the court, as there was the "revocation as it relates to the judicial release * * *, and then the revocation as it relates to the original sentence in which the Court imposed a split sentence of community control." (Dec. 20, 2019 Tr. at 3.) The court noted appellant's October 23, 2019 motion to terminate, and found appellant's sentence to a consecutive term of community control on Counts 1 and 3 to be "a void sentence." (Dec. 20, 2019 Tr. at 3-4.) As such, the court concluded that appellant "[could not] be revoked on that" and "would have to be resentenced" on Counts 1 and 3. (Dec. 20, 2019 Tr. at 4.) Based on testimony from appellant's probation officer, the trial court revoked appellant's judicial release community control due to appellant's failure to make adequate payments toward restitution.

{¶ 13} On January 23, 2020, the court held a hearing to address appellant's ability to pay restitution. Following the hearing, the court issued a judgment entry finding that appellant willfully or intentionally failed to pay restitution by not making a bona fide effort to acquire the resources to pay.

{¶ 14} The court held a sentencing hearing on June 25, 2020 to address both the "revocation as to Counts 4 through 23 and sentencing as to Counts 1 and 3." (June 25, 2020 Tr. at 3.) The court noted the pending appeal in *Thompson II*, but indicated that it wanted to "move forward with the revocation" and "sentencing" in the case. (June 25, 2020 Tr. at 7.) The court stated that "with respect to Counts 4 through 23," the court had previously revoked appellant's community control and was "impos[ing] the remaining days on the [5-year] sentence." (June 25, 2020 Tr. at 12-14.) The court noted that appellant had 1,520 days of jail-time credit on Counts 4 through 23. With respect to Counts 1 and 3, the court sentenced appellant to concurrent 5-year terms of imprisonment. The court stated that "the record [would] reflect zero days of jail time credit" on Counts 1 and 3. (June 25, 2020 Tr. at 15.)

{¶ 15} On July 10, 2020, the trial court issued a judgment entry imposing sentence. The court stated that appellant's original sentence on Counts 1 and 3 was "void under *State v. Hitchcock*," and that appellant was resentenced to concurrent 6-year terms of imprisonment on Counts 1 and 3. (July 10, 2020 Entry at 2.) The court reimposed the aggregate 5-year prison sentence on Counts 4 through 23, and stated that the sentence on Counts 4 through 23 would run "consecutively to Counts One and Three, for a total of Eleven (11) years." (July 10, 2020 Entry at 3.) The court ordered appellant to pay restitution in the amount of $625,727.86 to the church. On July 22, 2020, the court granted appellant's motion to stay sentence pending appeal.

{¶ 16} Appellant appeals, assigning the following seven errors for our review:

> [I.] The trial court improperly modified a voidable sentence, which was only subject to correction on direct appeal.
>
> [II.] The harsher sentence of imposing a five-year prison sentence in lieu of community control was a vindictive sentence not based on defendant's identifiable conduct after the original sentencing.
>
> [III.] The court committed error by finding that Mr. Thompson did not make sufficient bona fide efforts legally to acquire the resources to pay restitution.
>
> [IV.] The court improperly imposed consecutive sentences without making the findings required by *State v. Bonnell* [140 Ohio St.3d, 2014-Ohio-3177] and R.C. 2929.14(C)(4).

[V.] The trial court ordered Mr. Thompson's sentences on Counts One and Three to run consecutively to the remaining counts, despite remaining silent on whether they should run consecutively at the sentencing hearing.

[VI.] The trial court improperly sentenced Mr. Thompson to six years in prison on Counts One and Three despite having actually sentenced him to five years in prison at the sentencing hearing on June 25th, 2020.

[VII.] The trial court lacked jurisdiction to rule on Mr. Thompson's sentencing while the issue of his sentencing was pending before this court.

{¶ 17} As it raises a jurisdictional question, we consider appellant's seventh assignment of error first. Appellant's seventh assignment of error asserts the trial court lacked jurisdiction to resentence appellant on Counts 1 and 3 while *Thompson II* was pending. We agree.

{¶ 18} " '[O]nce an appeal is perfected, the trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment.' " *State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga Cty.*, 129 Ohio St.3d 30, 2011-Ohio-626, ¶ 13, quoting *State ex rel. Rock v. School Emps. Retirement Bd.*, 96 Ohio St.3d 206, 2002-Ohio-3957, ¶ 8. *Accord In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, ¶ 9. *See State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97 (1978) (explaining that, when an appeal is taken, the trial court "does retain jurisdiction over issues not inconsistent with that of the appellate court * * *, such as the collateral issues like contempt, appointment of a receiver and injunction"). " 'When a trial court acts beyond its jurisdiction while an appeal is pending, its order is void.' " *Huntington Natl. Bank v. Bywood, Inc.*, 10th Dist. No. 16AP-358, 2017-Ohio-2829, ¶ 10, citing *Kitson v. Gordon Food Serv.*, 9th Dist. No. 15CA0078-M, 2016-Ohio-7079, ¶ 6. *Accord Kellie Auto Sales, Inc. v. Hernandez*, 10th Dist. No. 19AP-462, 2020-Ohio-1516, ¶ 17.

{¶ 19} Thus, when a defendant has perfected an appeal regarding their sentence, the trial court lacks jurisdiction to resentence the defendant during the pendency of the appeal. *State v. Triplett*, 4th Dist. No. 11CA3, 2011-Ohio-5431, ¶ 6-7 (holding that the trial court's attempt to resentence defendant after defendant had "perfected an appeal of his sentence"

was "clearly inconsistent with [the court's] appellate jurisdiction"); *State v. Dunning*, 12th Dist. No. CA2013-05-048, 2014-Ohio-253, ¶ 8 (stating that a notice of appeal divests a trial court of the "ability to resentence a defendant to correct a sentencing error while his appeal is pending"); *State v. Taogaga*, 8th Dist. N0. 79845, 2002-Ohio-5062, ¶ 19; *State v. Bowman*, 10th Dist. No. 02AP-1025, 2003-Ohio-5341, ¶ 21. *See also Whipps v. Ryan*, 10th Dist. No. 14AP-67, 2014-Ohio-5302, ¶ 42 (holding that "[b]ecause appellant's motion [in the trial court] in large part related to issues subject to determination by this court [on appeal], the trial court was without jurisdiction to entertain appellant's motion").

{¶ 20} In *Thompson II*, appellant argued that his sentence to a consecutive term of community control on Counts 1 and 3 was void pursuant to *Hitchcock* and thus subject to collateral attack. Appellant's October 23, 2019 motion asked the trial court to find his sentence on Counts 1 and 3 void pursuant to *Hitchcock*. Thus, when the trial court found appellant's sentence on Counts 1 and 3 void and resentenced on those counts, the court ruled on the same issue which was pending before this court in *Thompson II*. Accordingly, as the trial court's decision to void appellant's sentence on Counts 1 and 3 and resentence on those counts was inconsistent with this court's ability to review, modify, or affirm the judgment in *Thompson II*, the trial court lacked jurisdiction to resentence appellant on Counts 1 and 3 while *Thompson II* was pending. Although appellant filed the October 23, 2019 motion in the trial court, the invited error doctrine does not apply to matters of subject-matter jurisdiction. *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, ¶ 27; *State v. Hardie*, 4th Dist. No. 14CA24, 2015-Ohio-1611, ¶ 12.

{¶ 21} The state contends the trial court did not resentence appellant on Counts 1 and 3 at the June 25, 2020 hearing. The state claims the trial court simply revoked appellant's community control on Counts 1 and 3 and imposed "the sanction attached to the revocation of community control." (Appellee's Brief at 13.) The state asserts appellant was "under the trial court's community control supervision pursuant to R.C. 2929.15 and R.C. 2929.20," and that the trial court accordingly had jurisdiction to revoke appellant's community control and impose the appropriate sentence regardless of the appeal in *Thompson II*. (Appellee's Brief at 11.)

{¶ 22} The trial court did retain jurisdiction to revoke appellant's judicial release, community control, and impose sentence despite the appeal. *Thompson II*. "The

revocation of community control is an exercise of the sentencing court's criminal jurisdiction." *State v. Heinz*, 146 Ohio St.3d 374, 2016-Ohio-2814, ¶ 15. Thus, a trial court possesses "jurisdiction to sentence a defendant for a community-control violation during the pendency of the defendant's appeal from the underlying judgment of conviction." *State v. Buttery*, 1st Dist. No. C-170141, 2018-Ohio-2651, syllabus. *Accord State v. Manson*, 3d Dist. No. 14-98-50 (May 28, 1999); *State v. Jordan*, 8th Dist. No. 56493 (Nov. 22, 1989).

{¶ 23} However, with respect to Counts 1 and 3, the trial court unequivocally stated at the December 20, 2019 and June 25, 2020 hearings, and in its July 10, 2020 entry, that it was voiding appellant's sentence due to the *Hitchcock* error and resentencing appellant on those counts. The court treated the resentencing on Counts 1 and 3 "separately" from the revocation and imposition of sentence on Counts 4 through 23. (June 25, 2020 Tr. at 16.) Accordingly, the record does not support the state's contention that the trial court revoked appellant's community control on Counts 1 and 3 and imposed sentence pursuant to the revocation.

{¶ 24} The state further argues that "by the time [appellant] was revoked in 2020, his void-sentence claim was moot because [he] had served the bulk of his community control sentence on Counts 1 and 3." (Appellee's Brief at 13.) The state's belief that appellant had served much of his sentence on Counts 1 and 3 is understandable, as the court stated at the January 16, 2015 hearing that appellant would begin serving his community control sentence on Counts 1 and 3 when appellant began his term of judicial release community control. As we explain below, however, appellant has yet to serve his 5-year term of community control on Counts 1 and 3.

{¶ 25} Although the court's statements in 2015 indicated that appellant's sentence on Counts 1 and 3 was the 6-year prison sentence underlying the term of community control, appellant's sentence on Counts 1 and 3 was to community control, not prison. Unlike probation, "which [was] a period of time served during suspension of a sentence, community control sanctions are imposed as the punishment for an offense at a sentencing hearing." *Heinz* at ¶ 14, citing R.C. 2929.01(E) and (FF). Although a court sentencing a defendant to community control must inform the defendant of the prison term the court could impose if the defendant violates community control, "when one is sentenced to community control supervision, the defendant is sentenced to community control and not

sentenced to the stated prison term." *State v. Solomon*, 11th Dist. No. 2017-P-0078, 2019-Ohio-1841 ¶ 39, citing *State v. Duncan*, 12th Dist. No. CA2015-05-086, 2016-Ohio-5559, ¶ 19-26. *See* R.C. 2929.19(B)(4); *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, ¶ 23.

{¶ 26} Furthermore, when the court granted appellant judicial release in 2015 it could only release appellant from the non-mandatory prison term he was serving on Counts 4 through 23. R.C. 2929.20, the statute creating judicial release, provides that "[o]n the motion of an eligible offender or upon its own motion, the sentencing court may reduce the eligible offender's aggregated nonmandatory prison term or terms through a judicial release under this section." R.C. 2929.20(B). *See State v. Greene*, 2d Dist. No. 02-CA-17, 2002-Ohio-2595, ¶ 3 (stating that "[j]udicial release is a purely statutory creation"); *State v. Watkins*, 10th Dist. No. 20AP-313, 2020-Ohio-5203, ¶ 17, quoting 1 Anderson's *Ohio Criminal Practice and Procedure*, Section 36.101 (2019) (stating that, following the enactment of R.C. 2929.20 in 1997, judicial release "is now 'the sole source of judicial authority for modifying the sentence of an incarcerated felon' "). R.C. 2929.20 does not permit a court to grant judicial release from a term of community control.

{¶ 27} If a court grants an eligible offender judicial release from prison, R.C. 2929.20(K) requires the court to "place the eligible offender under an appropriate community control sanction" and to "reserve the right to reimpose the sentence that it reduced if the offender violates the sanction." Thus, "[w]hen a trial court grants a motion for judicial release pursuant to R.C. 2929.20[(K)], 'it, in effect, suspends the balance of the terms of the originally imposed sentences and places 'the eligible offender under an appropriate community control sanction.' " *State v. Terry*, 10th Dist. No. 11AP-127, 2011-Ohio-6666, ¶ 9, quoting *State v. Darthard*, 10th Dist. No. 01AP-1291, 2002-Ohio-4292, ¶ 11. The remainder of the defendant's prison sentence is "suspended pending either the successful completion of a period of community control or the defendant's violation of a [judicial release] community control sanction." *State v. Alexander*, 3d Dist. No. 14-07-45, 2008-Ohio-1485, ¶ 7, citing *State v. Mann*, 3d Dist. No. 3-03-42, 2004-Ohio-4703, ¶ 8. *Accord State v. Jackson*, 12th Dist. No. CA2000-03-045 (June 25, 2001); *State v. Bazil*, 11th Dist. No. 2003-T-0063, 2004-Ohio-5010, ¶ 29.

{¶ 28} Although R.C. 2929.20(K) "uses the phrase 'community control sanction' in reference to the status of an offender when granted early judicial release," the "rules dealing with a violation of an original sentence of community control (R.C. 2929.15) should not be confused with the sections of the Revised Code that address judicial release (R.C. 2929.20)." *Terry* at ¶ 9, quoting *State v. Franklin*, 5th Dist. No. 2011-CA-00055, 2011-Ohio-4078, ¶ 12. R.C. 2929.15 applies only "to offenders who were initially sentenced to community control sanctions and permits a trial court to newly impose a prison term upon an offender who later violates the community control sanction." *Terry* at ¶ 9, citing *Franklin* at ¶ 14. "In contrast, an offender who has been granted early judicial release pursuant to R.C. 2929.20 has already been ordered to serve a term of incarceration as part of the original sentence but, upon motion by the 'eligible offender,' is released early from prison." *Terry* at ¶ 9. *Accord State v. Phipps*, 3d Dist. No. 3-20-07, 2021-Ohio-258, ¶ 18, quoting *State v. Cox*, 3d Dist. No. 2-09-31, 2010-Ohio-3799, ¶ 9, fn. 3 (stating that "[e]ven though 'community control sanctions are imposed when judicial release is granted, judicial release is different from and not synonymous with community control' ").

{¶ 29} If the offender violates their judicial release community control and the court revokes judicial release, pursuant to R.C. 2929.20(K), the " 'court's option in this instance with respect to ordering incarceration is limited to the reinstatement, with credit for time served, of the sentences that it suspended upon the granting of judicial release.' " *Terry* at ¶ 10, quoting *Darthard* at ¶ 13. *Accord State v. Jones*, 3d Dist. No. 10-07-26, 2008-Ohio-2117, ¶ 15; *State v. Taylor*, 1st Dist. No. C-110295, 2012-Ohio-232, ¶ 7; *State v. Salter*, 10th Dist. No. 14AP-211, 2014-Ohio-5524, ¶ 8-9. R.C. 2929.20 "does not authorize the trial court to increase or reduce the original sentence." *Terry* at ¶ 12.

{¶ 30} Accordingly, when the trial court granted appellant judicial release in January 2015 it could only release appellant from the remainder of the prison term appellant was serving on Counts 4 through 23. As the judicial release simply suspended appellant's prison sentence on Counts 4 through 23 during the term of judicial release community control, appellant was still effectively serving his sentence on Counts 4 through 23 during his judicial release community control. *See State v. Best*, 7th Dist. No. 04 MA 203, 2005-Ohio-4375, ¶ 50, citing *State v. Peoples*, 151 Ohio App.3d 446, 2003-Ohio-151,

¶ 21 (10th Dist.) (stating that the "decision of a trial court to grant judicial release is, in effect, part of the court's original felony sentence").

{¶ 31} As the trial court sentenced appellant to serve Counts 1 and 3 consecutive to Counts 4 through 23, appellant's sentence on Counts 1 and 3 could not begin until appellant completed his sentence on Counts 4 through 23. Indeed, a consecutive sentence " 'begins to run only after the completion of a prior sentence.' " *State ex rel. Gray v. Karnes*, 10th Dist. 10AP-789, 2010-Ohio-5364, ¶ 41, quoting *Brinklow v. Riveland*, 773 P.2d 517 Colo. No. 87SA245 (Jan. 17, 1989). *Accord State v. Lyle*, 3d Dist. No. 1-13-16, 2014-Ohio-751, ¶ 36 (finding it "axiomatic that a consecutive sentence does not begin until the prior sentence has been completed"). *Compare Richards v. Eberlin*, 7th Dist. No. 04-BE-1, 2004-Ohio-2636, ¶ 21 (stating that, for concurrent sentences, "a person need not finish serving the first sentence before the time for the second sentence can be served, as is the case with consecutive sentences"). Thus, appellant's sentence to community control on Counts 1 and 3 could not begin until appellant either successfully completed the term of his judicial release community control or completed the prison term on Counts 4 through 23.

{¶ 32} The court's statement at the January 16, 2015 hearing, indicating that appellant would serve his community control sentence on Counts 1 and 3 simultaneously with his term of judicial release community control, was an impermissible attempt to alter appellant's final sentence on Counts 1 and 3 from a sentence served consecutive to Counts 4 through 23 to a sentence served concurrent with Counts 4 through 23. There was no statutory authority permitting the trial court to alter appellant's sentence on Counts 1 and 3 when it granted judicial release. *See State v. Carlisle*, 131 Ohio St.3d 127, 2011-Ohio-6553, ¶ 1 (holding that "[a]bsent statutory authority, a trial court is generally not empowered to modify a criminal sentence by reconsidering its own final judgment"); *State ex rel. Womack v. Marsh*, 128 Ohio St.3d 303, 2011-Ohio-229, ¶ 13, citing *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, ¶ 18-19.

{¶ 33} Thus, as the trial court lacked jurisdiction to resentence appellant on Counts 1 and 3 while the appeal in *Thompson II* was pending, the portion of the court's July 10, 2020 entry resentencing appellant to a prison term on Counts 1 and 3 is void. *Harper* at ¶ 42 (holding that "[a] sentence is void when a sentencing court lacks jurisdiction"); *Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, ¶ 46 (stating that a "void judgment is a

nullity"). Appellant's sentence on Counts 1 and 3 remains the sentence originally imposed in 2010: 5-year terms of community control to be served concurrently to each other and consecutive to the sentence on Counts 4 through 23.

{¶ 34} Although the trial court lacked jurisdiction to resentence appellant on Counts 1 and 3 while *Thompson II* was pending, the court retained jurisdiction to revoke appellant's judicial release community control on Counts 4 through 23 and impose the appropriate sentence on those counts. Pursuant to R.C. 2929.20(K), when the court revoked appellant's judicial release on Counts 4 through 23, it was limited to reimposing the prison sentence it previously suspended when granting judicial release, with credit for time served. Because the trial court originally sentenced appellant to serve Counts 1 and 3 consecutive to Counts 4 through 23, when appellant completes the approximate 11-month prison term remaining on Counts 4 through 23, his 5-year term of community control on Counts 1 and 3 will begin.

{¶ 35} Based on the foregoing, appellant's seventh assignment of error is sustained. Appellant's first, second, fourth, fifth, and sixth assignments of error all concern the court's resentencing on Counts 1 and 3. As our ruling on appellant's seventh assignment of error demonstrates that the trial court lacked jurisdiction to resentence on Counts 1 and 3, our ruling on appellant's seventh assignment of error renders appellant's first, second, fourth, fifth, and sixth assignments of error moot.

{¶ 36} Appellant's third assignment of error asserts the trial court erred by finding appellant did not make sufficient bona fide efforts to acquire the resources to pay restitution.

{¶ 37} "A trial court may impose restitution as a condition of [community control]," and it is generally "within the trial court's discretion to revoke [community control] where the [offender] has failed to make restitution." *State v. Conway*, 10th Dist. No. 05AP-358, 2006-Ohio-288, ¶ 11. *See also State v. Thompson*, 3d Dist. No. 3-16-12, 2016-Ohio-8401, ¶ 1, citing *State v. Arm*, 3d Dist. No. 14-14-03, 2014-Ohio-3771, ¶ 22 (stating that "[a] trial court's decision to revoke a defendant's judicial release based on a violation of the conditions of his judicial release will not be disturbed absent an abuse of discretion"). However, "[i]f a trial court revokes community control for non-payment of financial obligations imposed as part of that community control, 'the Fourteenth Amendment to the

United States Constitution is implicated.' " *State v. McDaniel*, 10th Dist. No. 18AP-875, 2019-Ohio-4996, ¶ 10, quoting *State v. Rudin*, 1st Dist. No. C-110747, 2012-Ohio-2643, ¶ 8.

{¶ 38} In *Bearden v. Georgia*, 461 U.S. 660 (1983), the United States Supreme Court considered whether it was constitutionally permissible for a court to revoke an indigent defendant's probation and sentence the defendant to prison due to the defendant's failure to pay a fine and restitution. The court held, in relevant part, as follows:

> [I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment. Only if alternative measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

*Bearden* at 672-73.

{¶ 39} Accordingly, "before revoking community control and re-imposing a suspended prison sentence, [a trial court] is 'required to not only inquire into the reasons for [the defendant's] failure to make full restitution payments, but also find that [the defendant] had " 'willfully refused to pay or [had] failed to make sufficient bona fide efforts legally to acquire the resources to pay.' " ' " *McDaniel* at ¶ 12, quoting *State v. Conte*, 9th Dist. No. 28868, 2018-Ohio-4688, ¶ 12, quoting *State v. Estright*, 9th Dist. No. 27598, 2016-Ohio-1194, ¶ 11, quoting *Bearden* at 672. *Accord State v. Breckenridge*, 10th Dist. No. 10AP-652, 2011-Ohio-1493, ¶ 12 (stating that "a court cannot revoke community control for failure to pay restitution" unless there is "evidence that the failure to pay or to obtain employment was willful or intentional"); *State v. Dockery*, 187 Ohio App.3d 798, 2010-Ohio-2365, ¶ 16 (1st Dist.). "Facts sufficient to establish the degree of willfulness required

to support revocation must be developed in the record." *State v. Hudson*, 10th Dist. No. 00AP-236 (Nov. 14, 2000).

{¶ 40} At the January 23, 2020 ability-to-pay hearing, appellant testified that he had an associate's degree in theology from an unaccredited Christian college and that his primary occupation prior to the present case was as a church pastor. Following his release from prison in January 2015, appellant began working for MiraCit Development Corporation ("MiraCit"), a development corporation owned by Living Faith Apostolic Church. Appellant explained that MiraCit had been "in bankruptcy" since he was incarcerated and was "not making any money to have any full-time employees." (Jan. 23, 2020 Tr. at 15, 26.) As such, appellant stated that Bishop Posey, the bishop of Living Faith Apostolic Church, paid him in cash weekly. Although Bishop Posey initially paid appellant $500 per week, since summer 2016, Bishop Posey had been paying appellant only $300 per week. Appellant stated that the "bulk" of what he did for MiraCit was "cutting grass and picking up trash." (Jan. 23, 2020 Tr. at 16.)

{¶ 41} Appellant stated that he tried to get fast food and manufacturing jobs while on community control, but was unsuccessful. He claimed that each place he went to apply "told [him], no, we do not hire felons." (Jan. 23, 2020 Tr. at 18.) Although appellant indicated some potential employers "stated as well" that his lack of a college education was a problem, he explained that "the big one was the criminal record." (Jan. 23, 2020 Tr. at 59.) However, appellant admitted he never informed his probation officer he was having difficulties finding another job due to his felony convictions. Appellant stated that, when a friend informed him UPS would hire individuals with felony convictions, he applied at UPS and was hired. Appellant began working a part-time, third-shift position at UPS in July 2019 making approximately $300 per week. As appellant continued to work for MiraCit during the day, appellant's income effectively doubled beginning in July 2019.

{¶ 42} Appellant indicated that his monthly expenses included rent, utilities, cell phone bill, and auto and renter's insurance. However, appellant admitted that when he was first released from prison in 2015, he did not have to "pay any type of rent or utilities," and stated that his parents had paid the rent at his current residence from 2017 until the "last half" of 2019. (Jan. 23, 2020 Tr. at 24, 31-32.) Appellant explained that his former probation officer "established a $200 a month [restitution] payment" for him. (Jan. 23,

2020 Tr. at 23.) Although appellant initially made the $200 per month payments, when his weekly pay was reduced to $300 in 2016, he reduced his monthly restitution payments to $100 and eventually $50. From June 2017 to February 2019, appellant paid only $50 per month toward his sizeable restitution. Appellant began paying $200 per month toward restitution again after he became employed with UPS.

{¶ 43} On March 19, 2020, the trial court issued an entry concluding that appellant "willfully or intentionally failed to pay restitution by not making a bona fide effort." (Mar. 19, 2020 Entry at 6.) The court noted that appellant had paid "less than 1% (one percent) of the amount owed since his release" despite being "fully capable of better employment." (Mar. 19, 2020 Entry at 6.) The court acknowledged appellant's contention that he could not find additional employment due to his felony convictions, but observed that appellant "never provided his probation officer with documentation of the jobs that he was seeking or that he was having difficulty seeking other employment." (Mar. 19, 2020 Entry at 2.) The court also noted that "after the April 26, 2019 hearing, [appellant] did obtain better employment with UPS." (Mar. 19, 2020 Entry at 6.) The court stated that, while it did not expect appellant to earn the salary he was earning as a church pastor, income of $300 per week was "under employed for this [appellant]." (Mar. 19, 2020 Entry at 5.)

{¶ 44} Appellant contends that his failure to pay more toward restitution was not willful or intentional, as his job prospects were limited due to his felony convictions and his limited post-secondary education. However, as noted by the trial court, appellant never discussed the difficulties he was allegedly having finding additional employment with his probation officer. Moreover, appellant's employment with UPS shortly after the April 26, 2019 revocation hearing demonstrated appellant was capable of finding additional employment despite his felony convictions and limited college education. Appellant admitted at the ability-to-pay hearing that he "could have put forth better effort as far as going out and finding other employment or at least attempting, let's say attempting, to find other employment than what [he] did." (Jan. 23, 2020 Tr. at 58.) Rather than finding additional or more lucrative employment throughout the majority of his community control term, appellant chose to work for a bankrupt development corporation receiving $300 cash per week.

{¶ 45} The record demonstrates the trial court made the necessary inquiry under *Bearden* into the reasons for appellant's failure to make adequate payments toward restitution. The record supported the court's conclusion that appellant willfully or intentionally failed to pay restitution by not making a bona fide effort to acquire the resources to do so.  Accordingly, appellant's third assignment of error is overruled.

{¶ 46} Having sustained appellant's seventh assignment of error, thereby rendering appellant's first, second, fourth, fifth, and sixth assignments of error moot, and having overruled appellant's third assignment of error, the judgment of the Franklin County Court of Common Pleas is affirmed in part, reversed in part, and this case is remanded to that court for proceedings consistent with law and this decision.

*Judgment affirmed in part,*
*reversed in part; and case remanded.*

SADLER and MENTEL, JJ., concur.

_____